PEOPLE v ADAMS

PEOPLE v STITT

Docket Nos. 77862, 77919. Argued March 5, 1987 (Calendar Nos. 15-16). Decided June 27, 1988.

Steven Adams was convicted by a jury in the Genesee Circuit Court, Earl E. Borradaile, J., of breaking and entering an occupied dwelling. The Court of Appeals, DANHOF, C.J., and ALLEN and D. E. HOLBROOK, JR., JJ., remanded the case for an explanation of the trial court's reasons for imposing the sentence. On remand, the trial court reiterated its determination that the defendant was unfit for probation because he had perjured himself during trial. The Court of Appeals, BRONSON, P.J., and M. J. KELLY and LATREILLE, JJ., in an unpublished opinion per curiam, remanded the case for resentencing by a different judge, holding that the trial court's consideration of the defendant's perjury was error (Docket No. 69537). The people appeal.

Joseph R. Stitt was convicted by a jury in the Genesee Circuit Court, Robert M. Ransom, J., of larceny from a person. In imposing sentence, the court deviated from the sentencing guidelines, articulating among other factors that the defendant had perjured himself during trial. The Court of Appeals, R. B. BURNS, P.J., and R. M. MAHER and DENEWETH, JJ., in an unpublished opinion per curiam, remanded the case for resentencing, concluding that the trial court had impermissibly enhanced the defendant's sentence by weighing the perceived perjury (Docket No. 79651). The people appeal.

In an opinion by Justice BOYLE, joined by Chief Justice RILEY and Justices BRICKLEY, ARCHER, and GRIFFIN, the Supreme Court *held:*

A trial court, in imposing sentence, may consider a defendant's perjured testimony where it is based upon a wilful, material, and flagrant falsehood. Where the record contains a rational basis for the conclusion that the defense is a flagrant falsehood and that such misstatements have a logical bearing

REFERENCES

Am Jur 2d, Criminal Law §§ 525 *et seq.*
See the Index to Annotations under Criminal Law.

on the defendant's prospects for rehabilitation, the trial court properly may consider this circumstance in imposing sentence.

1. The appropriate approach to sentencing is the individualization of a sentence to a given offender. To achieve this objective, a sentencing judge is afforded a wide discretion in the sources and types of evidence used to assist in determining the kind and extent of punishment to be imposed within the limits fixed by law. Highly relevant, if not essential, to the selection of an appropriate sentence is possession of the fullest information possible concerning the defendant's life and characteristics.

2. A trial judge may consider a defendant's false testimony in imposing sentence. While a trial judge may not impose a harsher sentence for the crime of which the defendant is convicted so as to punish the defendant for perjury, perjury may be considered in assessing a defendant's prospect for rehabilitation. There is no right, constitutional or otherwise to testify falsely. A defendant's truthfulness or mendacity while testifying, almost without exception, is probative of the defendant's attitudes toward society and prospects for rehabilitation and thus relevant to sentencing. If a sentencing judge, consistent with legislative policy, is to exercise discretion and tailor a sentence to the individual, reason dictates that evidence of a character trait which is probative of rehabilitation prospects should be considered.

Reversed.

Justice LEVIN, joined by Justice CAVANAGH, dissenting, stated, while perjury and the subornation of perjury should be punished appropriately, the summary enhancement of sentences without the safeguards of a hearing and judicial review cannot be justified on the basis that the present laws and procedures for punishing perjury and subornation of perjury are inadequate. To the extent that present laws and procedures are inadequate, they should be reformed, not only where a defendant in a criminal case commits or suborns perjury, but also where parties in civil cases or witnesses for the prosecution in criminal cases so affront the administration of justice.

The primary mission and constitutional responsibility of the judiciary is to adjudicate controversies. Sentencing is ancillary to the adjudicative function. Sentencing concerns should not be permitted to indirectly discourage presumptively innocent persons from exercising their trial rights, and should be subordinated to the extent necessary to avoid jeopardizing or diminishing discharge of the judiciary's primary mission. The risks to the adversarial system and to the defendant's freedom to exercise the right to trial clearly outweigh whatever improve-

ment might result in the assessment of a defendant's prospects for rehabilitation.

A person charged with an offense should not be put in fear of providing truthful testimony because of the possibility that the trier of fact and the sentencing judge might perceive that the testimony was false and that the judge might, on that basis, summarily enhance the sentence. To protect the adversarial system and a defendant's opportunity to exercise the right to trial, the Supreme Court should state, as a matter of policy, that a sentencing judge should assess a defendant's prospects for rehabilitation without regard to whether the defendant testifies or otherwise defends against the charge.

CRIMINAL LAW — SENTENCING — PERJURY.

A trial court, in imposing sentence, may consider a defendant's perjured testimony where it is based upon a wilful, material, and flagrant falsehood.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Barbara A. Menear* for defendant Adams.

*Brenda R. Williams* for defendant Stitt.

BOYLE, J. We are asked in these consolidated cases to decide whether a judge may consider, when imposing sentence, a conclusion that the defendant committed perjury while testifying. In *People v Adams,* we are also asked to consider whether the defendant's appeal should be dismissed because he had escaped from prison during its pendency. The Court of Appeals in both cases ruled that the sentencing judge may not consider perjured testimony in sentencing. In *People v Spangler,* 429 Mich 29; 413 NW2d 1 (1987), five justices of this Court agreed that perjury may be considered by a sentencing judge. Because of our disposition of another issue, that view did not, in *Spangler,* constitute the law of the case. We now

hold that a trial court may consider perjured testimony at sentencing. We reverse the decisions of the Court of Appeals.

I

FACTS

*A. PEOPLE v ADAMS*

During the evening of April 17, 1982, the home of Lester and Virginia Knorr was burglarized. The defendant was arrested and charged with breaking and entering an occupied dwelling with intent to commit larceny in violation of MCL 750.110; MSA 28.305. At trial, the defendant offered an alibi defense. He testified that on the evening of the break-in, he was home playing cards with his family and some friends. He further testified that, except for an eighteen-minute period between 7:55 P.M. and 8:13 P.M. when he went to buy cigarettes at a nearby gas station, he remained at his residence. This version of events was substantiated by the defendant's testifying witnesses.

The state offered the testimony of Gladys Blahovec. Mrs. Blahovec lived next to the Knorrs on Byrens Drive. She testified that a vehicle pulled into the victims' driveway at approximately 8:30 P.M. and stayed for fifteen minutes. She stated that she could not identify the vehicle as a car or truck, but that it did have one dim headlight. Her daughter, Betty Lavigueur, testified that sometime between 8:30 P.M. and 8:45 P.M., as she turned into Byrens Drive, she saw a blue or green pickup truck with an off-color door leaving Byrens Drive at the intersection of Byrens and Lewis. The Knorr residence is approximately one-eighth of a mile from the Lewis intersection. The defendant owned a blue-green pickup truck with a partially

white door on the driver's side and the truck had one dim headlight.

Samples of tire tracks taken from the victim's driveway were found to be similar to the tire treads on the defendant's truck. Also, boot prints taken were judged similar to the tread design on boots owned by the defendant. Finally, a toolbox taken from the victim's residence was found locked in a shed on the defendant's property.

The defendant was convicted on November 16, 1982, and sentenced by Genesee Circuit Judge Earl E. Borradaile to a term of five to fifteen years. At sentencing, Judge Borradaile commented that incarceration was fitting because the defendant had victimized his brother-in-law's friend and had lied during his trial testimony. These factors, the judge concluded, militated against the prospect of rehabilitation and, therefore, the option of probation.

The defendant thereafter filed a timely claim of appeal on February 9, 1983. During the pendency of that appeal, prior to the submission of briefs, the defendant escaped from the Southern Michigan Prison at Jackson. He remained on escapee status until his capture on January 11, 1984. Because of defendant's "unavailability," the Court of Appeals granted to defense counsel an extension of time in which to file her brief. As a result, there was a delay of nearly two months. While still a fugitive, the defendant's appeal proceeded to the Court of Appeals on briefs, oral argument not having been requested. By order of that Court dated January 30, 1984, the case was remanded to the trial court "for an explanation of the court's reasons in imposing this sentence." In compliance, the trial court reiterated its earlier determination that defendant was unfit for probation because he had betrayed a family friendship and "told a bald-faced lie in the courtroom."

In an unpublished per curiam opinion,[1] the Court of Appeals rejected the prosecutor's request that defendant's appeal be dismissed because he had escaped from prison. The Court reasoned that dismissal would amount to a double punishment[2] and further serve to deny defendant's right to appeal under art 1, § 20 of the Michigan Constitution. The Court also concluded that the trial court erred in considering the defendant's perjury in imposing sentence. *People v Anderson,* 391 Mich 419; 216 NW2d 780 (1974); *People v McConnell,* 122 Mich App 208; 332 NW2d 408 (1982), vacated on other grounds 418 Mich 881 (1983). Reasoning that a separate count of perjury was available if deemed appropriate, and that use of this criterion is improper under *People v Coles,* 417 Mich 523, 550; 339 NW2d 440 (1983), the Court remanded the case for resentencing, to be completed before a different judge.

The prosecutor appealed that ruling, and this Court granted leave. 425 Mich 852 (1986).

### B. PEOPLE v STITT

The defendant was charged with larceny from a person in violation of MCL 750.357; MSA 28.589, resulting from a purse snatching outside of Mounir's grocery store in the City of Flint. The complaining witness, Sandra Fisher, testified that she saw the defendant standing alone outside Mounir's grocery as she approached the door. While shopping, she saw the defendant inside the store, and he was seen again outside the store when Ms. Fisher left. She identified the defendant as the man who stole her purse in the parking lot as she prepared to enter her car. Ms. Fisher was also able

---

[1] *People v Adams,* unpublished opinion per curiam of the Court of Appeals, decided December 12, 1985 (Docket No. 69537).

[2] See MCL 750.193; MSA 28.390, making prison escape a felony.

to identify the defendant in a photo identification approximately two months after the theft.

The defendant testified that he was at Mounir's when Ms. Fisher's purse was stolen, but that he was inside the store playing video games, did not leave the store, and that one Val Rawls had taken the purse. He further testified that when asked by the police about the incident, he had informed Sergeant Richard Lewis of the Flint Police Department that Val Rawls had taken the purse. He also claimed to have accompanied Sergeant Lewis to a sewer drain where the purse was supposedly hidden.

In rebuttal, Sergeant Lewis testified that when he questioned the defendant he indicated no knowledge of a purse snatching. He indicated, further, that he had not been in the area of the crime for over one and one-half years, and that he did not know where Mounir's market was located. Sergeant Lewis further testified that the defendant had never mentioned the name Val Rawls and that he did not conduct any type of field investigation with the defendant to locate the missing purse.[3]

The defendant was convicted by a Genesee County jury and was sentenced to a term of six years, eight months to ten years. In imposing sentence, Judge Robert M. Ransom considered, among other factors, his belief that the defendant had lied during his trial testimony. After concluding that the trial judge had impermissibly enhanced defendant's sentence by weighing his perjured testimony, the Court of Appeals vacated defendant's sentence and remanded the case for resentencing, citing *People v McConnell, supra; Scott v United States*, 135 US App DC 377; 419

---

[3] Ms. Fisher testified that someone had returned her purse through the mail.

F2d 264 (1969).[4] The state moved in the Court of Appeals for a rehearing, requesting that the defendant's sentence be reinstated. That request was denied.

The prosecutor appealed in this Court, and leave was granted. 425 Mich 852 (1986).

## II

### PERJURY

The Legislature has determined that the appropriate approach to sentencing is the individualization of a sentence to a given offender. MCL 769.8; MSA 28.1080. To achieve this objective, a sentencing judge is afforded "wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams v New York,* 337 US 241, 246; 69 S Ct 1079; 93 L Ed 1337 (1949). "Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Id.,* p 247.

Recognizing, however, that sentencing discretion may be arbitrarily applied, this Court established certain criteria to aid the sentencing judge in determining an appropriate sentence. In *People v Snow,* 386 Mich 586, 592; 194 NW2d 314 (1972), we listed four basic considerations for sentence determination: "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses." This list was intended to set out a framework for evaluation of the various

---

[4] *People v Stitt,* unpublished opinion per curiam of the Court of Appeals, decided November 7, 1985 (Docket No. 79651).

facts and circumstances surrounding the yet-to-be-sentenced defendant. Just what facts properly may be weighed when considering reformation, protection of society, discipline, and deterrence, however, has never been rigidly classified, and we reject any invitation to do so. It remains the role of the sentencing judge to weigh facts deemed relevant to the sentencing decision. *People v Coles, supra,* 550. Our function is to identify those factors which when injected into the sentencing process tread unfairly upon the defendant's rights.

Thus, a sentencing judge does not have unfettered discretion. Numerous checks shield the defendant from an arbitrary sentence and help to insure that the objective of personalized disposition is achieved. In addition to the compilation of a presentence report[5] and scoring under the sentencing guidelines, other decisions of this Court limit consideration of factors deemed inappropriate in sentencing, helping to insure that the judge enjoys a broad, yet fair, knowledge of the defendant and the circumstances of the crime of which he is convicted.[6]

In the cases at bar, the sentencing judges considered the defendants' false testimony when passing sentence. This the defendants claim to be error. We must, therefore, decide whether it is appropriate to limit the trial court's discretion and exclude this factor. For the reasons set forth below, we

---

[5] MCL 771.14; MSA 28.1144.

[6] See, e.g., *People v Fleming,* 428 Mich 408, 429; 410 NW2d 266 (1987) (good-time release, disciplining credit, or effect of Prison Overcrowding Emergency Powers Act may not be considered); *People v Yennior,* 399 Mich 892; 282 NW2d 920 (1977) (sentence may not be based on refusal to admit guilt); *People v Moore,* 391 Mich 426, 440; 216 NW2d 770 (1974) (sentencing judge may not consider noncounseled convictions); *People v Earegood,* 383 Mich 82, 85; 173 NW2d 205 (1970) (improper to consider defendant's last-minute plea or jury trial waiver); *People v Towns,* 69 Mich App 475, 479; 245 NW2d 97 (1976) (sentencing judge may not consider polygraph results).

decline to do so. A sentencing judge may consider the defendant's false testimony when passing sentence. The issue becomes under what circumstances this may occur.

In *People v Anderson, supra,* this Court stated that a trial judge's consideration at sentencing of his impression that the defendant was protecting a codefendant was error. Viewed as, in effect, *punishing* the accused for exercising his Fifth Amendment right to remain silent, the Court analogized this constitutional infirmity to the rule in *Scott v United States, supra,* where it was found to be error for a judge to impose additional punishment because the judge believed that the defendant committed perjury.

In *Anderson,* the sentencing error was found in the sentencing judge's consideration of the defendant's exercise of his Fifth Amendment right to remain silent. In these cases now before the Court, however, the defendants chose to testify. Thus, the right to remain silent is clearly not involved, and the *Anderson* rationale is inapposite.

In *Scott v United States, supra,* the Court of Appeals predicated error on the sentencing judge's *punishment* of the defendant because he believed the accused perjured himself. Writing for the *Scott* court, Judge Bazelon observed that "[i]t is indeed unlikely that many men who commit serious offenses would balk on principle from lying in their own defense. . . . But the defendant does have a right to testify in his own defense. . . . If the Government for whatever reason concludes that prosecution for perjury is appropriate, he risks punishment for that as well." *Scott, supra,* p 382. See also *People v McConnell, supra.* To the extent that *Scott* stands for the rule that a trial judge may not punish a defendant merely because he perjured himself, we would agree. Under our con-

stitutional scheme, the defendant has both a right to testify and a right to remain silent. However, having voluntarily chosen to testify, the accused must speak truthfully. The constitution "cannot be perverted into a license to use perjury by way of a defense . . . ." *Harris v New York,* 401 US 222, 225; 91 S Ct 643; 28 L Ed 2d 1 (1971); *United States v Wong,* 431 US 174, 178; 97 S Ct 1823; 52 L Ed 2d 231 (1977); *People v Esters,* 417 Mich 34; 331 NW2d 211 (1982).[7]

Thus, while we agree with the statement that a judge may not punish a defendant for perjury, we do not agree with the conclusion of the Court of Appeals in *Scott* that the Fifth Amendment forbids consideration of perjury in assessing the defendant's prospects for rehabilitation. We reject that conclusion as did the United States Supreme Court in *United States v Grayson,* 438 US 41; 98 S Ct 2610; 57 L Ed 2d 582 (1978).

In *Grayson,* the district judge at sentencing concluded that a prison term was warranted both to deter future criminal conduct, and because he viewed Grayson's defense as " 'a complete fabrication without the slightest merit whatsoever.' " *Id.,* p 44. The Third Circuit Court reversed and remanded for resentencing, concluding that "no additional penalty may be imposed upon a defendant because the trial judge believes that the defendant lied while testifying." 550 F2d 103, 108 (CA 3, 1976). See *Poteet v Fauver,* 517 F2d 393 (CA 3, 1975). The dissenting judge would have found the trial judge's evaluation of the defendant's testimony proper stating:

---

[7] Prosecution under the perjury statute, MCL 750.422; MSA 28.644, is the appropriate course when the circumstances indicate that *punishment* is warranted. However, viewing the realities of the criminal justice system with a pragmatic eye, the threat of a perjury prosecution to the testifying defendant may be at times an empty one. That a threat of perjury prosecution may not inhibit the commission of perjury is not, however, a condonation of perjury.

If under *Williams, supra,* and the legion of cases which have followed it, hearsay evidence as to prior arrests, pending indictments, or indictments tried but not resulting in convictions, may be considered constitutionally in the selection of an appropriate sentence, it seems to me there is even greater justification for the judge to consider the attitude and conduct of the defendant during trial. In the instant case, the judge personally observed *the witnesses and the demeanor of the defendant;* he was impressed by the *"complete fabrication"* of the defense and *its utter lack of merit.* His observation specifically goes to the sort of person the defendant is; it is precise, is pertinent to the sentence the defendant should receive, and to the desirable objective of making the punishment fit the offender. [550 F2d 112. Emphasis added.]

The United States Supreme Court reversed, concluding that the sentence was not constitutionally impermissible. The Court observed that the critical inquiry in individualized sentencing requires exploration into the background, character, and demeanor of the person convicted and that "[a] defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing." *Grayson, supra,* p 50. Rejecting the rule in *Scott,* the Court offered:

The *Scott* rationale rests not only on the realism of the psychological pressures on a defendant in the dock—which we can grant—but also on a deterministic view of human conduct that is inconsistent with the underlying precepts of our criminal justice system. A "universal and persistent" foundation stone in our system of law, and particularly in our approach to punishment, sentencing, and incarceration, is the "belief in freedom of human will and a consequent ability and duty of

the normal individual to choose between good and evil." Given that long-accepted view of the "ability and duty of the normal individual to choose," we must conclude that the defendant's readiness to lie under oath—especially when, as here, the trial court finds the lie to be flagrant—may be deemed probative of his prospects for rehabilitation. [*Id.,* p 52. Citations omitted.]

Although we are not obligated to follow the holding in *Grayson,* we join the majority of our sister states addressing this issue[8] and find the

---

[8] *State v Lask,* 135 Ariz 612, 615; 663 P2d 604 (1983) ("trial court may consider perjured testimony in enhancing sentence"); *People v Redmond,* 29 Cal 3d 904, 913; 176 Cal Rptr 780; 633 P2d 976 (1981) ("A trial court's conclusion that a defendant has committed perjury may be considered as one fact to be considered in fixing punishment as it bears on defendant's character and prospects for rehabilitation"); *People v Wilson,* 43 Colo App 68, 71; 599 P2d 970 (1979) ("sentencing court may consider a defendant's false testimony as probative of his rehabilitative potential"); *State v Huey,* 199 Conn 121, —; 505 A2d 1242, 1247 (1986) (defendant's denial of criminal act proper factor of defendant's lack of readiness for rehabilitation); *Banks v United States,* 516 A2d 524, 530-531 (DC App, 1986); *Hernandez v State,* 446 So 2d 235, 236 (Fla App, 1984); cf. *Everage v State,* 504 So 2d 1255, 1258 (Fla App, 1986), reh den 508 So 2d 13 (Fla, 1987); *Daytona Beach v Del Percio,* 476 So 2d 197 (Fla, 1985); *State v Kohoutek,* 101 Idaho 698, 699; 619 P2d 1151 (1980) (trial court may consider defendant's attempt to suborn perjury); *State v Bragg,* 388 NW2d 187, 191 (Iowa App, 1986); *People v Meeks,* 81 Ill 2d 524, 536; 44 Ill Dec 103; 411 NE2d 9 (1980) (sentencing judge may consider perceived perjury); *State v May,* 227 Kan 393, 397-399; 607 P2d 72 (1980) (trial judge may consider falsity of defendant's testimony as well as prosecutor's opinion concerning defendant's testimony); *Coleman v State,* 621 P2d 869, 883 (Alas, 1980), cert den 454 US 1090 (1981) (sentencing judge may consider perceived perjury to determine rehabilitation potential, not to punish alleged perjury); *Atkins v State,* 40 Md App 461, 464-466; 391 A2d 868 (1978) (trial judge may negatively consider defendant's truthfulness when imposing sentence); *State v Plante,* 417 A2d 991, 996 (Maine, 1980) (respect for truth relevant to rehabilitation); *State v Thompson,* 310 NC 209, 226-227; 311 SE2d 866 (1984) (trial court may consider defendant's perjury as aggravating sentencing factor); *State v Stewart,* 70 Ohio App 2d 147, 150-151; 435 NE2d 426 (1980) (rejecting *State v Jeffers,* 57 Ohio App 2d 107; 385 NE2d 641 [1978] in favor of *Grayson* analysis); *Commonwealth v Alicea,* 498 Pa 575, 579-581; 449 A2d 1381 (1982) (trial court may consider defendant's perjury as one factor in imposing sentence). See also *Commonwealth v Thurmond,* 268 Pa Super 283; 407 A2d 1357 (1979); *State v Bertoldi,* 495 A2d 247, 253-254 (RI, 1985) ("trial justice was not in

logic and reasoning compelling. If a sentencing judge is to exercise discretion and tailor a sentence to the individual, reason dictates that this Court not render the judge legally oblivious to evidence of a character trait which is probative of rehabilitation prospects. On this theme, Judge Marvin Frankel aptly stated:

The effort to appraise "character" is, to be sure, a parlous one, and not necessarily an enterprise for which judges are notably equipped by prior training. Yet it is in our existing scheme of sentencing one clue to the rational exercise of discretion. If the notion of "repentance" is out of fashion today, the fact remains that a manipulative defiance of the law is not a cheerful datum for the prognosis a sentencing judge undertakes. . . . Impressions about the individual being sentenced— the likelihood that he will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, the degree to which he does or does not deem himself at war with his society—are, for better or worse, central factors to be appraised under our theory of "individualized" sentencing. The theory has its critics. While it lasts, however, a fact like the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the available indicia.

error in considering defendant's willingness to lie under oath"); *State v Degen,* 396 NW2d 759, 760-761 (SD, 1986) (no abuse of discretion to consider defendant's fabrication at sentencing); *State v Bunch,* 646 SW2d 158, 160-161 (Tenn, 1983) (trial court may consider untruthfulness as a factor bearing on defendant's prospect for rehabilitation); *In re Welfare of Luft,* 21 Wash App 841, 855; 589 P2d 314 (1979) ("perjury by the defendant may be considered in sentencing"); *State v Finley,* — W Va —, —; 355 SE2d 47, 52-53 (1987) (following *Grayson*). Contra: *State v Smith,* 407 So 2d 652, 658 (La, 1981) (defendant's untruthfulness and refusal to plea bargain are not factors to form sentence under state statutes); *Commonwealth v Coleman,* 390 Mass 797, 807-810; 461 NE2d 157 (1984). See also anno: *Propriety of sentencing judge's consideration of defendant's perjury or lying in pleas or testimony in present trial,* 34 ALR4th 888.

[*United States v Hendrix*, 505 F2d 1233, 1236 (CA 2, 1974).][9]

We do not suggest that the trial judge has uncontrolled discretion in this area, or that there could not be circumstances in which the record would support a claim that the defendant's testimony did not display a flagrant willingness to lie under oath, that the trial court gave improper weight to false testimony on an irrelevant matter, or that the trial court improperly concluded that the perjury in question was wilful, that is, that although material the evidence could not rationally be attributed to the defendant and was therefore not relevant to the prospects for rehabilitation.

However, when the record contains a rational basis for the trial court's conclusion that the defendant's testimony amounted to wilful, material, and flagrant perjury, and that such misstatements have a logical bearing on the question of the defendant's prospects for rehabilitation, the trial court properly may consider this circumstance in imposing sentence.

We can perceive no basis for denying to a trial judge at sentencing the type of circumstantial inference that a factfinder may indisputedly draw from flight, or from fabrication of evidence. In such an instance, the factfinder may infer consciousness of guilt. In the sentencing process, the trial judge is required to presume guilt in fact and should be allowed to infer that a defendant's wilful

_____

[9] Further, we should not ignore the practical effect of a rule that would exclude this consideration. A trial judge, after having heard all the evidence, including testimony of the accused, undoubtedly forms an opinion of the defendant's character. Were we to hold that the judge must ignore his opinion of the mendacity of the defendant when engaging in the individualized evaluation required for indeterminate sentences, we would belie the fact that trial judges assess the character of those who stand before them.

material perjury under oath circumstantially indicates the absence of a character trait for being law-abiding that bears on the appropriate sentence.

Nor can we accept the premise that permitting consideration of such circumstance in evaluating a convicted defendant's prospects for rehabilitation will chill the exercise of the defendant's right to trial.[10]

The United States Supreme Court has recently and unanimously reaffirmed that there is no right, constitutional or otherwise, to testify falsely, *Nix v Whiteside,* 475 US 157; 106 S Ct 988; 89 L Ed 2d 123 (1986), and the Court specifically rejected the chilling argument as "without basis" in *Grayson.*

> The right guaranteed by law to a defendant is narrowly the right to testify truthfully in accordance with the oath—unless we are to say that the oath is mere ritual without meaning. . . . Assuming, arguendo, that the sentencing judge's consideration of defendants' untruthfulness in testifying has any chilling effect on a defendant's decision to testify falsely, that effect is entirely permissible. There is no protected right to commit perjury. [*United States v Grayson, supra,* p 54.]

The Legislature has declared that tailoring the sentence to the offender is the task of the trial judge. It is not attitudinal formulation but this legislatively imposed responsibility that requires the trial court to make the agonizing evaluation of the person who stands before the court awaiting judgment in light of the consequences of the crime committed and the need to protect society. It

---

[10] The dissent suggests that sentencing concerns should be subordinated "to the extent necessary to avoid jeopardizing or diminishing discharge of the judiciary's primary mission . . . of adjudicating controversies," *post,* p 705.

would surely simplify the duties of trial court judges if sentences were to be imposed without these considerations, but it is just as surely inconsistent with the sentencing policy the Legislature has declared and that the defendant, the victim, and the public therefore have a right to expect. To fail to appreciate this fact is to fail to understand the significance of the obligation of a trial court judge to the oath of office. To a trial judge, wilful and flagrant mendacity is not an "abstraction" but part of the mix of considerations brought to bear in this process so vital to the defendant, to the victim, and to the community.[11]

As the Court in *Grayson* observed, the moral postulate of our legal system is that the normal individual has freedom of will and therefore the duty to choose between good and evil. That premise is reflected in decisions such as *Nix*, in the Canons of Professional Ethics, and in the rule we adopt today.

The uniquely American commitment to procedural due process and our historical mistrust of government has fostered not only tolerance but admiration for the skillful ambush of the powers that be. We are not required, however, to hold harmless the creation of a wholly fabricated defense. As difficult as the process is, the fact is that trial judges, like trial lawyers, and particularly lawyers in criminal defense work, are constantly

---

[11] The suggestion that the Legislature should be called upon to address this problem wholly fails to comprehend that in any prosecution in which the potential penalty is mandatory life, or any term of years substantially in excess of the fifteen-year penalty for perjury, the sanction against perjury (as in the case of jury tampering or witness intimidation) is inherently ineffective and not subject to legislative correction.

This observation, however, is not the basis for our conclusion. Despite the fact that in a given case the criminal penalties for perjury may not have a deterrent effect, it is as logically possible that a defendant facing these penalties will adhere to the oath and present truthful testimony as it is that the defendant will not.

called upon to resolve issues regarding what con-
duct permissibly pushes the system to the limit,
and what is abuse of the process. A system that
imposes such refined and particularized responsi-
bility rests on the notion that humankind has
choices and that consequences flow from one
choice or the other. This is a moral postulate
ingrained in our tradition. That the postulate
cannot be proven does not destroy its efficacy. The
postulate is asserted to affirm both what we are
and what we ought to be as a legal system and as
a country. The opposing view reduces the individ-
ual defendant to an automaton, the lawyer to an
appendage of the client's desires, and the system
itself to the deterministic posture that in the face
of adversity one cannot expect and therefore can-
not judge another human being by the lengths to
which they will go to escape the consequences of a
current predicament.

### A. PEOPLE v ADAMS

The defendant argues that the record fails to
show that Judge Borradaile considered his perjuri-
ous testimony as a rehabilitative factor. We cannot
agree. At the original sentencing, Judge Borra-
daile indicated his reasons for the sentence im-
posed stating:

> *The Court:* Mr. Adams, I have read through the
> presentence investigation report. And, of course,
> I've heard the entire trial of this matter because I
> was the presiding Judge at the trial of the matter.
> I consider that you got on the witness stand and
> lied to the Court, lied to the jury. And, the Court
> is satisfied that the evidence was exactly as I
> believe you told the probation officer in your com-
> ment that you say, quote, "If I had been on the

jury, I would have come to the same decision," end quote.

I'm satisfied you did it. I don't know if your ex-brother-in-law was involved with you. That's something that apparently the prosecutor and the police could not determine as to whether he had in fact was [sic] involved as well. So they did not proceed against him. But *I'm satisfied you proceeded and I'm satisfied that you got on the witness stand and lied to the jury and to the Court. And, for that reason I don't consider that there is any basis, when somebody lies, to justify attempting probation when they can't tell the truth when they're under oath. So I intend to incarcerate you.* [Emphasis added.]

Mr. Kittendorf, you may address the Court at this time relative to allocution.

*Mr. Kittendorf:* Judge, first of all, Mr. Adams does have employment available to him. And, if the Court should see fit to send Mr. Adams to the county jail, we would request that he have a work release program so that he can both honor his support obligation to his previous family and his support obligation to his present family.

And, in addition to that, we recognize the—Of course, I was here during the course of the trial. And, I discussed the issue that you've raised right now with the young lady that did the probationary report. And, I'm not certain that I can totally—I can agree with you that he lied. I can certainly agree that—with Mr. Adams' comment that there was a significant amount of circumstantial evidence that was involved in this particular case. I would hope that the Court would decide this matter on the basis of what Mr. Adams can contribute to the community. And, that's really all that I have to say.

*The Court:* All right, anything you wish to add, Mr. Adams?

*The Defendant:* No, your Honor.

*The Court:* All right, *I don't consider that someone who takes advantage of a family where he had apparently been a guest before and then lies in the*

*trial of the matter has any basis for rehabilitation.*
And, that's the Court's determination as to send-
ing him to the state penitentiary. [Emphasis
added.]

After remand from the Court of Appeals order-
ing "an explanation of the court's reasons in im-
posing this sentence," Judge Borradaile similarly
stated:

And the Court notes that the testimony was
quite clear in the instant case that the defendant
had been a family friend of the family who was
victimized in this matter. It was quite apparent
that he knew that there was going to be a wedding
and that the family would be away from the home.
And the Court feels that he played upon that
personal knowledge as well as his buddy and
apparent brother-in-law who also attended the
wedding and the wedding reception thereafter.
And the Court is satisfied that the defendant used
that acquaintance with the family and the per-
sonal knowledge through his brother-in-law that
they were going to be away as the basis for his
going to the house when he knew that there would
be no one there for a period of time.

So that the Court feels that that is an—is a
factor that calls for increasing the sentence over
what the sentence might have been as a matter of
departure from what the guidelines would show.

The Court also felt that even though he had no
previous record, and thus under some circum-
stances if there [sic] weren't for this violation of
trust that he might be a fit subject for probation,
the amount of money involved—over $3,000 was
paid—*the fact that he took the witness stand and
the Court was satisfied that he told a bald-faced lie
in the courtroom, and despite the Supreme Court
recently ruling that there is a difference between
various types of perjury committed in a criminal
offense, the Court is of the opinion that he is not a
fit subject for probation.* [Emphasis added.]

Thus those two factors, the violation of trust and the lying on the witness stand, were the two factors, as noted in the previous transcript of the sentencing, that the Court took into account in determining the sentence of five years minimum to fifteen years maximum.

Review of these proceedings illustrates that the defendant's false testimony was but one element considered, and that rehabilitation was a motivating factor in Judge Borradaile's sentence. There is no indication from the record that punishment for perjury was intended or contemplated.

In this case, the record reveals that defendant's perjured testimony was material to his defense. The defendant freely chose to testify after consulting with his defense counsel and offered corroborating testimony from other witnesses to substantiate his alibi defense. The defendant's testimony was entirely exculpatory and bore directly on the question of his guilt. The record supports Judge Borradaile's conclusion that the defendant lied while testifying and that, therefore, his use of that fact when assessing defendant's prospects for rehabilitation was not error. We, therefore, reverse the decision of the Court of Appeals and reinstate the defendant's original sentence.

In light of the foregoing analysis, we need not decide whether Adams' appeal should forfeit because he escaped during its pendency. In Michigan, a first appeal is a constitutional right. To wade into the waters of waiver or forfeiture is thus unnecessary. We adhere to the Court's practice "not to grapple with a constitutional issue except as a last resort." *Taylor v Auditor General,* 360 Mich 146, 154; 103 NW2d 769 (1960).

*B. PEOPLE v STITT*

In this case, the defendant argues that he was denied the protections of a trial for perjury when Judge Ransom included among his reasons for the sentence imposed that the defendant lied to the jury. At the sentencing, Judge Ransom stated:

*The Court:* Mr. Stitt, the sentence guidelines which the court is to use as a guide in sentencing provides for a minimum sentence range from zero to twelve months. I'm going to deviate from that sentence guideline and I'm required to state on the record why I'm not going to follow the guidelines and why I'm going to impose the sentence that I'm going to impose.

So, I'm compelled to say some things here that I'm sure you're not going to like, but that's my obligation and I'm going to tell it to you as I see it.

*I'm satisfied that you lied to the jury. I'm satisfied that you have been manipulative in dealing with the pre-sentence investigator. I'm satisfied from the report that the pre-sentence investigator felt also that you lie [sic]. This is an assaultive offense and I'm satisfied that you have no scruples when it comes to your conduct and other peoples' rights. I think you're a threat to the community and for that reason I'm going to impose the maximum sentence that can be imposed here.* [Emphasis added.]

Defendant's argument is predicated upon his belief that Judge Ransom was punishing him for lying at trial. Review of this excerpt indicates that this is not the case. Judge Ransom listed in support of the sentence given, his belief that the defendant lied, that he was manipulative with the presentence investigator, that his was an assaultive offense, that he had no respect for the rights of others, and that he was a threat to the community. For these reasons a lengthy prison term was

selected.[12] We are satisfied that Judge Ransom was not punishing Mr. Stitt for lying. Rather, Mr. Stitt's mendacity while testifying was merely stated as a factor in sentencing which was "probative of his attitudes toward society and prospects for rehabilitation . . . ." *Grayson, supra,* p 50.

As in *Adams,* the record in this instance supports the use of defendant's perjury at sentencing. He testified that he was inside Mounir's grocery store at the time of the theft and that Val Rawls had taken the purse. Further, he claimed that he had assisted Sergeant Richard Lewis in an attempt to locate the missing purse. These claims were completely contradicted by the testimony of Officer Lewis and by the identification of defendant as the perpetrator by the complaining witness Fisher. The defendant freely testified to these facts, and his testimony was obviously material to the issue of his guilt.

Judge Ransom indicated that the defendant's false testimony was but one factor he addressed when passing sentence. We find that factor to have been properly considered. The decision of the Court of Appeals is reversed, and the defendant's original sentence is reinstated.

### CONCLUSION

Were the role of the sentencing judge merely to match the sentence to the crime, the burden of sentencing would be far less onerous. Our system, however, requires that focus be on the defendant. At this stage, character is always at issue. We observe, as did the *Grayson* Court, that

---

[12] We note that "rehabilitation" was never specifically mentioned during the sentencing, but this fact does not render the proceeding a trial for perjury. Judge Ransom was charged with assessing Mr. Stitt's character before passing sentence upon him; this task was succinctly accomplished.

[n]othing we say today requires a sentencing judge to enhance, in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false. Rather, we are reaffirming the authority of a sentencing judge to evaluate carefully a defendant's testimony on the stand, determine—with a consciousness of the frailty of human judgment—whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society. [*Id.,* p 55.]

We should not be understood as intimating that when assessing the prospects for rehabilitation perjured testimony should always be considered. We only hold that to do so based upon a wilful, material, and flagrant falsehood is not error.

RILEY, C.J., and BRICKLEY, ARCHER, and GRIFFIN, JJ., concurred with BOYLE, J.

LEVIN, J. (*dissenting*). We all agree that the defendant in a criminal case has a constitutional right to testify or to remain silent. If he chooses to testify, he must speak truthfully.[1] If he speaks falsely, the judge may not, absent a trial and conviction for perjury, "punish a defendant for perjury . . . ."[2]

The majority declares, however, that while a judge may not punish a defendant for perjury who has not been convicted of that offense, he may, when sentencing a defendant who testified but was nevertheless convicted, consider his belief that the defendant committed perjury while testifying in

[1] *Ante,* p 689.
[2] *Ante,* p 689.

assessing the defendant's "prospects for rehabilitation."[3] We disagree.

A

We all agree that perjury and the subornation of perjury should be appropriately punished.[4]

The summary enhancement of sentences without the safeguards of a hearing and judicial review cannot be justified on the basis that the present laws and procedures for punishing perjury and subornation of perjury are inadequate. To the extent that present laws and procedures are inadequate, they should be reformed to address the evil —not only where a defendant in a criminal case commits or suborns perjury, but also where parties

[3] Ante, p 689.

The majority adopts the analysis of the United States Supreme Court in United States v Grayson, 438 US 41; 98 S Ct 2610; 57 L Ed 2d 582 (1978).

The Grayson position has been rejected by the Supreme Judicial Court of Massachusetts. Commonwealth v Coleman, 390 Mass 797; 461 NE2d 157 (1984); Commonwealth v Souza, 390 Mass 813; 461 NE2d 166 (1984); Commonwealth v Gresek, 390 Mass 823; 461 NE2d 172 (1984).

The Supreme Court of Louisiana observed that Grayson declared that the defendant's perceived perjury at trial may be examined but cannot be the sole grounds for enhancing his sentence. "[T]he U. S. Supreme Court requires 'other knowledge' about the defendant in addition to his truthfulness, or lack thereof, to form a basis for the sentencing." State v Smith, 407 So 2d 652, 657 (La, 1981). Louisiana appellate courts have subsequently held that reference to perjury in the sentencing phase is an invalid consideration and necessitates resentencing. State v Rovaris, 464 So 2d 958 (La App, 1985); State v Adams, 471 So 2d 298 (La App, 1985).

In Florida, appellate courts have ordered resentencing where the defendant's perceived perjury at trial was considered. Beauvais v State, 475 So 2d 1342 (Fla App, 1985); Trainor v State, 468 So 2d 484 (Fla App, 1985); Bowdoin v State, 464 So 2d 596 (Fla App, 1985).

[4] I therefore agree that the justice system should not "hold harmless the creation of a wholly fabricated defense." Ante, p 695. I further agree with the substance of the majority's observations following that statement. Our disagreement concerns the need for traditional judicial safeguards when one so "judge[s] another human being." Ante, p 696.

in a civil case or a witness for the prosecution in a criminal case so affronts the administration of justice.

In the meantime, this Court should disdain shortcuts that bypass traditional judicial safeguards. The exercise of power, absent those safeguards, jeopardizes the adversary system and the rights of the defendant to stand trial, to be judged by a jury of his peers, to offer a defense, and to testify.

B

The primary mission and constitutional responsibility of the judiciary is to adjudicate controversies. While the sentencing function has traditionally been assigned by the Legislature to the judiciary, and while courts are indeed obliged to sentence under the present system, sentencing is nevertheless ancillary to the adjudicative function.[5] Sentencing concerns should not be permitted to indirectly discourage presumptively innocent persons from exercising their trial rights. The adversary system and the rights of the defendant to stand trial, to be judged by a jury of his peers, to offer a defense, and to testify are, under the constitution, basic features of the adjudicative process and should not be jeopardized or diminished to bring about a hypothetical improvement in the sentencing of offenders.

---

[5] We have become so accustomed to having judges exercise sentencing power that some may believe that sentencing is necessarily a judicial function.

The Legislature determines the sentence that may be imposed and who may exercise the sentencing power. The Legislature provides mandatory determinate sentences for certain offenses, thereby eliminating any judicial role in sentencing for those offenses.

The Legislature may delegate the sentencing function to a group of persons, such as a jury, or to an entity, such as an administrative board, rather than to a judge.

Lawmaking at the judicial, as well as at the legislative, level requires an assessment of and choice between competing values. In scaling the competing values involved in the instant cases, the highest value should be accorded to the preservation of the adjudicative function and the defendant's rights to stand trial, to be judged by a jury, to offer a defense, and to testify. It is the paramount obligation of the courts to preserve these important aspects of our judicial system. Sentencing concerns should be subordinated to the extent necessary to avoid jeopardizing or diminishing discharge of the judiciary's primary mission and constitutional responsibility of adjudicating controversies.

In deciding that a judge may, when sentencing a defendant, consider his belief that the defendant lied at trial, the majority necessarily concludes that the possible resulting improvement in the assessment of the defendant's prospects for rehabilitation outweighs diminishing the adversarial system and the defendant's opportunity to exercise his trial rights. I am persuaded that the risks to the adversarial system and to the defendant's freedom to exercise his trial rights clearly and manifestly outweigh whatever improvement might result in the assessment of a defendant's prospects for rehabilitation.[6]

---

[6] It is no longer widely accepted that the criminal justice system should seek to rehabilitate or reform the convicted offender rather than punish him and deter potential offenders. Dean Francis Allen observed:

The case against the rehabilitative ideal was first seriously undertaken in the years immediately following World War II. The indictment contained many counts. It was observed, first, that talk about rehabilitation frequently served as a cosmetic to disguise ugly realities in penal institutions that aggravate rather than cure criminality. It was noted, also, that the application of the rehabilitative ideal resulted in the exercise of

A person charged with an offense should not be put in fear of providing truthful testimony because of the possibility that the trier of fact and the sentencing judge might perceive that he testified falsely and that the judge might, on that basis, summarily enhance the sentence.

To protect the adversarial system and a defendant's unfettered opportunity to exercise his trial rights, this Court should state, as a matter of policy, that a sentencing judge should assess a defendant's prospects for rehabilitation without regard to whether he testifies or otherwise defends against the charge.

I

The defendant's right to testify and defend himself at trial is not, indeed, a license to commit perjury or suborn perjury. A defendant who lies when testifying or suborns perjury by causing others to testify falsely may, in the discretion of the prosecutor, be charged with perjury or suborn-

broad discretion by judges and correctional personnel, a discretion affecting basic human concerns, but largely free of meaningful legal standards and therefore frequently abused. But more important than any of these concerns was the growing perception that rehabilitative measures do not work, that after decades of experimentation there exists no validated scientific evidence of the capacity of rehabilitative programs to reduce criminal recidivism.

The case against the rehabilitative ideal has achieved spectacular success. Rarely has there been so precipitous and complete a reversal of professional opinion. Today the talk is of deterrence and incapacitation: the law's promises to inflict punishment on those who violate it must be kept. Sentences should be fixed and not subject to the discretion of parole boards; in many cases minimum sentences of imprisonment are to be mandatory. Persons who demonstrate dangerous propensities to violence should be subjected to long terms of incarceration. The concept of deserved punishment is to be refurbished and pressed into service. [Allen, *Central problems of American criminal justice,* 75 Mich L R 813, 821 (1977).]

ing perjury and be punished upon conviction therefor. The majority asserts, however, that the threat of a separate prosecution does not sufficiently deter a defendant from committing or suborning perjury.[7]

If the laws regarding perjury and subornation of perjury are inadequate, the Legislature[8] should respond.[9] Because perjury and subornation of perjury threaten the administration of justice, this Court might also consider addressing any inadequacy in the laws through its rule-making power.

[7] *Ante,* p 689, n 7.

[8] Today's decision is issued in the wake of dozens of laws enacted in the preceding months to strengthen law enforcement. See, e.g., 1988 PA 66, granting prosecutors additional rights of appeal; 1988 PA 67, providing for adjudication and disposition of juveniles fifteen years or older who are charged with certain offenses providing maximum sentences of life imprisonment; 1988 PA 71, authorizing juvenile courts to order a juvenile offender to pay restitution to the victim; 1988 PA 89, requiring the consent of the prosecutor and approval of the court for a defendant to waive the right to a jury trial in a criminal case.

[9] The asserted ineffectuality of the laws regarding perjury and the failure of prosecutors to enforce them more vigorously might even reflect a societal judgment regarding the importance of unfettered access to the judicial process.

The majority argues that a fifteen-year penalty for perjury "is inherently ineffective" to deter perjury by a defendant who faces a sentence for mandatory life or any term of years substantially in excess of fifteen years. Pursuant to legislative mandate, mandatory two-year felony-firearm sentences, MCL 750.227b; MSA 28.424(2), are routinely imposed upon persons convicted of and sentenced to life imprisonment for armed robbery, second-degree murder and first-degree murder.

Many persons convicted of armed robbery and second-degree murder are sentenced to minimum terms of less than ten years. Persons sentenced to parolable life sentences may be considered for parole after ten years. *People v Johnson,* 421 Mich 494; 364 NW2d 654 (1984). A consecutive sentence for perjury would be a meaningful deterrent to all such persons.

The deterrent effect of a consecutive sentence for perjury would be greater than the deterrent effect of the consecutive felony-firearm sentence because a defendant contemplating perjury has the opportunity to reflect, after committing the underlying offense and after consultation with counsel, and to consider whether he wishes to lie on the stand and thereby run the risk of further prosecution and a consecutive sentence for perjury.

The evil of perjury is not confined to criminal prosecutions. We have all heard of a circuit judge who opened court with the statement: "Let the perjury begin." Nor is it confined to defendants or witnesses for the defense. Witnesses for the prosecution also lie.

Empowering judges to address this evil only when a defendant in a criminal case is perceived to have lied is not an appropriate judicial or governmental response to the troubling problem of lying in judicial proceedings. A more serious and meaningful response is called for, a response that addresses the evil in both civil cases and in criminal cases—where a witness for the prosecution or the defense lies, not only where the defendant lies.

Suppose that after the conclusion of the trial of a civil action, the judge cited for contempt of court for lying[10] both the party whose position was rejected by the trier of fact and the party's witnesses and then summarily sentenced them to serve up to thirty days in the county jail and pay a fine of up to $250.[11] If this were to occur, the general trial bar would no doubt be speaking to us most urgently about due process and the threat to the adversarial system.

If judges were to move summarily against witnesses in civil actions or against witnesses for the prosecution on the basis that their disbelieved evidence constituted contempt, it would be clearer than it apparently is today that the issue of the defendant's guilt and the issue whether the defendant gave false evidence are separate issues[12] and that traditional safeguards against possible abuse of power should not be short-circuited.

---

[10] See 17 Am Jur 2d, Contempt, § 33, pp 38-39; *In re Scott,* 342 Mich 614; 71 NW2d 71 (1955).

[11] MCL 600.1715; MSA 27A.1715.

[12] See *People v Grimmett,* 388 Mich 590, 608; 202 NW2d 278 (1972). See also *People v Carter,* 128 Mich App 541; 341 NW2d 128 (1983).

II

Suppose that the Legislature enacted a law providing that if a defendant pleads guilty, the minimum sentence for burglary (*Adams*) shall not exceed five years, and the minimum sentence for larceny from a person (*Stitt*) shall not exceed three years. Suppose the law further provides that if the defendant does not plead guilty, but rather stands trial and puts the people to their proofs but does not offer affirmative evidence in defense, the minimum possible sentence is increased by one year; if he offers evidence in defense, an additional year may be added, and, if he testifies, another year may be added to enhance the sentence *if,* in the opinion of the sentencing judge, the defendant indicated by his defense, evidence or testimony that he is not a good prospect for rehabilitation.

I would hope that the Court would be uneasy about such legislation and would view it as authorizing the imposition of punishment without the safeguards of a trial and as penalizing a defendant's exercise of his constitutional rights to a trial, to be judged by a jury, to offer a defense, and to testify.

I see no significant difference between the potential effect of such legislation and the potential effect of the opinion that the Court announces today. Should the Legislature enact such a law, today's decision would understandably be cited as precedential authority that such an act is entirely constitutional.

III

The majority would allow a sentencing judge to enhance an offender's sentence if the judge detected wilful, material, and flagrant perjury at

trial.[13] The majority postulates that, by lying, a defendant demonstrates that he has a poor attitude toward society and, therefore, is not yet on the path toward rehabilitation.

Extending that analysis, a defendant who refuses to plead guilty and, by standing trial, puts the people to their proofs might also be seen as a poor candidate for rehabilitation. It would seem that the judge's perception that the defendant lacked any real defense[14] would be as demonstrative of poor prospects for rehabilitation as the judge's perception that the defendant committed perjury. Similarly, a defendant who offers evidence to rebut the prosecution's evidence or who permits his lawyer to cross-examine the complainant or other factual witnesses offered by the prosecution might also be seen as being unreceptive to rehabilitation.[15]

Simply stated, in that analysis, a guilty verdict may be seen to "establish" the defendant's intransigence in that he should have spared the complainant and the people the expense, inconvenience, and embarrassment of a trial. A defendant who fails to "coöperate" with the prosecution by entering a guilty plea thereby demonstrates that he has a poor attitude toward society and is unlikely to become rehabilitated and may therefore be sentenced more severely.[16]

---

[13] Ante, p 702.

[14] See ante, p 695, where the majority adverts to a "wholly fabricated defense."

[15] In Adams, the defendant offered an alibi defense. The majority states that "[t]he defendant freely chose to testify after consulting with his defense counsel and offered corroborating testimony from other witnesses to substantiate his alibi defense." Ante, p 699 (emphasis added).

[16] To be sure, there is a difference between offering a defense that is rejected and merely challenging the adequacy of the prosecutor's evidence. The latter cannot constitute perjury or suborning perjury.

A line could be drawn dividing offenders who are convicted after a trial into subclasses:

The majority's attitudinal formulation thus can readily be extended to discourage exercise of trial rights without regard to whether the defendant testifies, commits perjury, or suborns perjury.

IV

Juries tend to view a defendant's failure to testify as signifying that he is guilty. Revised MRE 609 (impeachment by evidence of conviction of a crime) recognizes the importance of removing barriers in the way of a defendant testifying:

> If a determination of prejudicial effect is required, the court shall consider only the conviction's similarity to the charged offense and the *possible effects on the decisional process if admitting the evidence causes the defendant to elect not to testify.* The court must articulate, on the record, the analysis of each factor. [Emphasis added.]

(a) those who deny or fail to acknowledge their guilt after arrest but, at some point before trial or verdict, acknowledge their guilt by pleading guilty,

(b) those who offer no evidence, relying unsuccessfully on the presumption of innocence,

(c) those who, as in *Adams,* offer testimony of witnesses or other exculpatory evidence that is rejected,

(d) those whose testimony, as in *Adams* and *Stitt,* is rejected by the trier of fact,

(e) those who, as in *Adams,* persist in asserting their innocence even after conviction or who do not, after conviction, acknowledge their guilt to the probation officer preparing the presentence report.

Offenders in the first category could be further graded: Those who confess (a) when arrested, (b) in the squad car after arrest, (c) to the booking officer, (d) to one of the interrogators, (e) to anyone who will listen—in or out of the cell, (f) upon arraignment on the warrant, (g) at the preliminary examination, (h) upon arraignment on the information, (i) at a pretrial, (j) before the jury is sworn, and (k) after the prosecution rests. To the extent that there is delay in confession, the defendant could be considered less sincere and less credible, and the prospects for his rehabilitation could be seen as less promising.

Meaningful differences between offenders in each of the foregoing subclasses, in terms of their attitudes toward society and their prospects for rehabilitation, have not, however, been established by evidence in the trial courts or before this Court. See parts VI and VII.

Today's decision presents the defendant with a difficult choice. If he fails to testify, the jury may be inclined to view his failure to testify as evidence of guilt. If he testifies and is convicted, his sentence may be summarily enhanced without meaningful judicial review. Even if he testifies truthfully, he may receive a harsher sentence if the jury and the judge erroneously believe that he was lying and the judge, on that basis, believes that his prospects for rehabilitation warrant an enhanced sentence.

Under the majority's analysis, an innocent defendant who is convicted because his defense is disbelieved might receive a harsher sentence for having testified and persisted in his assertion of innocence.[17] One would expect that, at sentencing, an innocent person who has been erroneously convicted might say, "Your honor, I am innocent. The jury made a mistake." Uttering those words may add years to a defendant's punishment because they may be perceived by the sentencing judge as evidencing a poor attitude toward society.[18]

Today's decision unavoidably discourages a defendant from giving truthful, as well as false, testimony.

V

The majority argues that its holding logically flows from the legislative mandate that sentences

---

[17] See *People v Yennior,* 399 Mich 892; 282 NW2d 920 (1977), where this Court said:

A court cannot base its sentence *even in part* on a defendant's refusal to admit guilt. [*Id.*]

[18] In *Adams,* the sentencing judge noted that Adams denied his guilt when speaking after conviction to the probation officer preparing the presentence report.

be individually tailored to suit the offender, as well as the offense. Justice Oliver Wendell Holmes cautioned, however: "The life of the law has not been logic: it has been experience."[19]

I acknowledge that there is a certain logic to the majority's position. The Legislature has indeed determined that sentences should be individualized.[20] The offender's prospects for rehabilitation is a factor that the sentencing judge may consider.

Typically, truthfulness or mendacity is probative of character and hence of a person's attitude toward society. It may indicate whether he is law abiding and, if he does break the law, what his prospects for rehabilitation might be.[21] Those abstractions do not, however, provide a basis for individualizing the sentence of a particular offender absent evidence that there is in fact a correlation between mendacity and a particular offender's prospects for rehabilitation.

And even if a correlation between a particular offender's mendacity and his prospects for rehabilitation were to be established, I nevertheless would urge that a judge not be permitted to consider the offender's apparent mendacity. Compelling policy reasons—the need to avoid diminishing the adversary system and the accused's opportunity to exercise his trial rights—militate against authorizing a judge to consider his perception of the bona fides of the defendant's testimony or defense at the time of sentencing.

[19] Holmes, The Common Law (Boston: Little, Brown & Co, 1938), p 1.

[20] When sentencing, the judge may take into consideration the deterrence of others from wrongdoing, the protection of society from further criminal acts by the defendant, and the punishment and rehabilitation of the defendant.

[21] I therefore do not disagree with the majority that "the moral postulate of our legal system is that the normal individual has freedom of will and therefore the duty to choose between good and evil." *Ante,* p 695.

VI

In authorizing a judge to consider, at the time of sentencing, his belief that the defendant lied at the trial, the majority necessarily proceeds on the premise that a more accurate assessment of a particular offender's prospects for rehabilitation will be made if the judge can consider such perception than if the perception must be ignored.

No evidence, in general or in particular, of the assumed correlation between lying and a defendant's prospects for rehabilitation has been presented to this Court. The sentencing judges apparently proceeded on essentially the same premise as does the majority: it is generally so well established that there is a meaningful correlation between a defendant's lying and his prospects for rehabilitation, that a judge may act on that generalization to "individualize" the sentence of a *particular* defendant without either evidence to support the premise that there is indeed a correlation as applied to *that* defendant or providing *that* defendant an opportunity to offer contrary evidence.

To be sure, sentencing proceedings do not have the formality of a trial. By characterizing a judge's perception that a defendant committed or suborned perjury as a sentencing factor, the safeguards of a trial are bypassed. The defendants in the instant cases were not notified in advance of the sentencing hearings that the sentencing judges had perceived that they had lied and were considering enhancing the sentences on that basis. There was no hearing on the accuracy of the judges' perceptions that Adams or Stitt lied at their trials. The judges did not state, except generally and only *after* the defendant's lawyer and the defendant were given an opportunity to address the court,

the evidence on which they relied in concluding that the defendants had lied. *After* the judges stated their determinations, the defendants were not given an opportunity to challenge the evidence on which the judges relied or to offer contrary evidence or argument. And, because there is no meaningful judicial review of such determinations and the resulting enhancement of sentences, the appellate review which a person convicted of perjury or subornation of perjury could obtain is effectively eliminated.

I would anticipate that if inquiry into the validity of the premise that there is a meaningful correlation between a *particular* defendant's lying and his prospects for rehabilitation were required or permitted, it would appear that there is a variety of expert opinion on the validity of the assumed correlation, generally and in particular.[22]

VII

Even if the assumed correlation between a particular defendant's lying and his prospects for rehabilitation were to be established, because of the risks to the adversarial system and the defendant's opportunity to exercise his trial rights in permitting a sentencing judge to consider his belief that the defendant gave false testimony, that perception should not be permitted to be considered unless it *significantly* adds to other characterological information concerning the particular defendant whose sentence is to be "individualized."

The sentencing judges in the instant cases did not state bases for concluding that the defendants'

[22] See n 6.

It might appear that there is a greater correlation between lying and prospects for rehabilitation where the underlying cause of the criminal activity is addiction to alcohol or drugs than where the offender is a sociopath who committed an assaultive offense.

testifying falsely added significantly to other characterological evidence they had observed at trial or set forth in the presentence reports concerning the defendants' prospects for rehabilitation.[23]

There has been a recurring ebb and flow in penological theories. Few, if any, have stood the test of time. There has been sufficient disillusionment with penological theories that this Court should be cautious before embracing yet another.[24]

Before a judge sentences on the premise that a significant and meaningful correlation exists between a particular defendant's testimony and his prospects for rehabilitation, he should at least[25] follow a more formal procedure than is ordinarily followed in sentencing. He should observe procedures comparable to those applicable when a judge wishes to take judicial notice of an asserted fact and thereby provide a defendant with an opportunity to offer expert and other testimony and evidence in opposition.[26]

## VIII

Lesser sentences may properly be imposed on defendants who are truly repentant and who, without regard to whether they have exercised their

[23] The sentencing judge in *Adams* said that a person who lies does not provide any basis for rehabilitation.

The sentencing judge in *Stitt* expressed indignation, but he did not speak of prospects for rehabilitation. He said that the defendant had no scruples and was a threat to the community. See n 45.

Although there is no specific reference to "prospects for rehabilitation" in the sentencing judge's statement in *Stitt,* the majority apparently assumes that the judge was thinking of the defendant's prospects for rehabilitation.

[24] See n 6.

[25] Because of the need to protect the adversary system and the defendant's opportunity to exercise his trial rights.

[26] See MRE 201.

right to a trial, are perceived to have good pros-
pects for rehabilitation.[27]

Some persons who accept responsibility for their
wrongdoing may indeed take a significant step on
the path to rehabilitation. But it is difficult to
determine whether a particular defendant has in
fact accepted responsibility for his wrongdoing[28] or
whether taking that step is truly indicative of
progress toward actual rehabilitation.[29]

Over ninety percent of criminal cases are dis-
posed of by pleas of guilty. The recidivist rate
would certainly be lower if admitting one's guilt
reflected that one was a good prospect for rehabili-
tation. Since a large number of offenders commit
further crimes—most of whom pled guilty when
they were convicted—there may not be a signifi-
cant difference in the prospects for rehabilitation

[27] If a defendant were to claim to be repentant at the time of
sentencing, the prosecutor, in challenging the bona fides of such a
claim, could justifiably refer to the defense offered at trial in arguing
that the defendant is not truly repentant. But, a defendant who does
not ask for mercy on the ground that he is repentant should not be
called upon at sentencing—as distinguished from at a trial for perjury
or subornation of perjury or a separate contempt hearing—to justify
his defense or testimony.

A defendant may—at least until today—exercise his trial rights
without explanation to the prosecutor, the presentence probation
officer, or the court. This Court should protect the free exercise of
those rights from direct or indirect invasion or penalty.

[28] Whatever correlation there may be between recognition and
acceptance by the offender of responsibility for personal character
defects and the prospects for or actuality of rehabilitation, few per-
sons, including judges, have the knowledge or experience to assess the
significance of the correlation in particular cases. And, those who may
have the expertise probably disagree.

[29] A person who puts the people to their proofs might be truly
repentant. He might have acknowledged his guilt to his family,
friends, a therapist, or his employer and taken meaningful steps to
reorganize his life and reform. He may have done so before the
criminal justice system ran its course. Such a person might neverthe-
less have availed himself of the opportunity to stand trial in the hope
that the trier of fact might conclude that he was guilty of a lesser
offense than the prosecutor was willing to allow him to plead guilty
to.

of persons who plead guilty compared to persons who stand trial and testify.

No evidence has been adduced that persons who are convicted on their pleas of guilty are better prospects for rehabilitation than those who stand trial and are convicted after their testimony or defense is rejected. Study may establish that there is little basis for believing that either group of offenders has good prospects for rehabilitation or that the prospects of both groups are much the same.

IX

I recognize that, under our system of justice, a defendant who stands trial may pay a price therefor.

Whatever one may think of the practice of plea bargaining,[30] whether for charge reduction or sentence concessions, it is a fact of life in the criminal justice system. A defendant who rejects a plea bargain for charge reduction runs the risk that, if convicted, his sentence will be more severe than it might have been under the terms offered by the prosecutor.

Even if no defense is presented, a sentencing judge might justifiably be more inclined to sentence the offender to a longer term than he would have imposed if the offender had pled guilty because, during trial, the judge learned the details of the offense and may have developed a greater appreciation of its enormity. Also, because the details of the offense might become notorious—as a result of publicity that would not have occurred but for the defendant's exercise of the right to

---

[30] See *People v Byrd,* 12 Mich App 186; 162 NW2d 777 (1968) (LEVIN, J., concurring).

trial—a judge might enhance the defendant's sentence to deter others.

A sentencing judge may consider what he observes in the courtroom as well as what he reads in the presentence report. But, because of the potential effect on the adversary system and the defendant's opportunity to exercise his trial rights, allowing a judge to consider his perceptions of a defendant formed on the basis of the defendant's courtroom behavior[31] differs from permitting him to consider his perception of the bona fides of the defendant's testimony or defense. The latter may affect all defendants who testify and are convicted while the former affects only those who so project themselves by their behavior apart from their defense.

X

The policy question—whether a judge should consider his belief that a defendant testified falsely in assessing the defendant's prospects for rehabilitation—should not be avoided by postulating that judges are unable to exclude such a perception from consideration.[32] At the time of sentencing,

---

[31] A judge contemplating taking into consideration his perceptions of the defendant, formed on the basis of the defendant's courtroom behavior, should so indicate before sentencing and provide the defendant an opportunity to attempt to persuade the judge not to do so. See *United States v Gonzalez*, 661 F2d 488 (CA 5, 1981), stating that a defendant must be given an opportunity to rebut the factual assumptions relied on by the sentencing judge to assure fundamental fairness, and *United States v Marshall*, 142 US App DC 167; 440 F2d 195 (1970), stating that a defendant does not have a meaningful opportunity to allocute when he does not know what evidence (a prior conviction) the judge is using in deciding the sentence.

[32] The majority states:

Were we to hold that the judge must ignore his opinion of the mendacity of the defendant when engaging in the individualized evaluation required for indeterminate sentences, we would belie the fact that trial judges assess the character of those who stand before them. [*Ante*, p 693, n 9.]

judges are often informed of incidents in a defendant's history and of prior convictions that the defendant asserts should not be taken into consideration.[33] Rather than interrupt proceedings to hold a hearing at that time, the judge may state that he will exclude the incident or the prior conviction from consideration.[34] We accept a judge's assertion that he has done so as a matter of course.

Similarly, there are rules of law that preclude the trier of fact from considering certain evidence in deciding the merits of an issue in dispute. Where the judge sits as trier of fact, he will frequently have learned of subsequent remedial measures, liability insurance, amounts received by the plaintiff in settlement from other tortfeasors, offers in compromise, similar acts, or prior convictions[35] and will be obliged to exclude such information from consideration when, as trier of fact, he decides the meritorious question.

It is also commonplace for juries to be instructed to ignore evidence inadvertently admitted on the assumption that the jury can be trusted to obey such an instruction. Judgments of conviction, assessments of damages, and findings of no cause of action are routinely affirmed by the appellate courts on that assumption.

---

[33] The defendant may claim that the circumstances were different than those set forth in the presentence report or that a prior conviction was illegally obtained.

[34] See *People v Gray,* 125 Mich App 482, 487; 336 NW2d 491 (1983), stating that when "a defendant claims that a presentence report contains an error, the trial judge may hold an evidentiary hearing to determine the report's accuracy, may accept the defendant's unsworn statement, *or* may ignore the alleged misinformation while sentencing" (emphasis supplied); *United States v Cimino,* 659 F2d 535 (CA 5, 1981); *Commonwealth v Ayala,* 277 Pa Super 363; 419 A2d 1187 (1980).

[35] See McCormick, Evidence (3d ed), § 60, pp 153-154.

XI

The majority states that the "sentencing judge does not have unfettered discretion. Numerous checks shield the defendant from an arbitrary sentence . . . ."[36]

The majority adds:

> We do not suggest that the trial judge has uncontrolled discretion in this area, or that there could not be circumstances in which the record would support a claim that the defendant's testimony did not display a flagrant willingness to lie under oath, that the trial court gave improper weight to false testimony on an irrelevant matter, or that the trial court improperly concluded that the perjury in question was wilful, that is, that although material the evidence could not rationally be attributed to the defendant and was therefore not relevant to the prospects for rehabilitation.
>
> However, when the record contains a rational basis for the trial court's conclusion that the defendant's testimony amounted to wilful, material, and flagrant perjury, and that such misstatements have a logical bearing on the question of the defendant's prospects for rehabilitation, the trial court properly may consider this circumstance in imposing sentence. [*Ante,* p 693.]

The majority reviews the evidence and the sentencing proceedings in the instant cases and concludes that the judges' determinations that Adams and Stitt lied while testifying are supported by the record, that their perceptions were but one factor considered in determining the sentences that were imposed, that in the case of Adams "rehabilitation was a motivating factor," and that in neither case

---

[36] *Ante,* p 687.

does the record indicate that punishment for perjury was intended or imposed.[37]

It will be a rare case where a defendant's testimony will not bear "directly on the question of his guilt."[38] To the extent that the defendant does not testify "directly on the question of his guilt" on direct examination, the prosecutor will, on cross examination, surely focus "directly on the question of his guilt." The record will always contain a rational basis for the conclusion that "material"[39] misstatements have been presented. If there is not record support for the conclusion that the defendant lied while testifying, there would assuredly have been insufficient evidence to convict, and the information should have been dismissed before sentencing.

Since there will assuredly be record support for the conclusion that the defendant lied while testifying whenever a defendant is convicted after testifying, a search for record support does not provide a check serving to "shield the defendant from an arbitrary sentence." Nor does such a limited search demonstrate that an appellate court has scrutinized the sentence to determine whether the judge abused his discretion or gave improper weight to perceived perjury on an irrelevant matter.

Since the majority does not require that the record contain evidence establishing a correlation between lying and a particular defendant's prospects for rehabilitation, the conclusion that a particular defendant's "misstatements have a logical bearing on the question of [his] prospects for rehabilitation"[40] is effectively insulated from appellate challenge.

---

[37] *Id.,* p 699.

[38] *Id.,* p 699.

[39] *Id.,* p 693.

[40] *Id.,* p 693.

XII

Adams was twenty-nine years old, married, gain-fully employed, and had no known juvenile or adult offense history aside from the instant of-fense. The probation officer stated that, "aside from his recent conviction, he has led a relatively stable and law abiding life. However, he continues to deny his involvement in the instant offense, and, in view of this attitude, it would appear that probation supervision would serve little purpose for this individual."[41] It was recommended that Adams be sentenced to serve a period of time in the county jail, i.e., no more than one year.[42]

The sentencing guidelines' minimum sentence for Adams' offense was zero to twelve months.[43] He was sentenced to serve a minimum term of sixty months. The majority states that the sentencing judge did not err in considering that Adams "lied while testifying" in "assessing defendant's pros-pects for rehabilitation," but it does not focus on the question whether the judge abused his discre-tion in sentencing Adams to five times the maxi-mum minimum sentence recommended by the sentencing guidelines. Unless this Court is pre-pared to address that question, the assertions in the majority opinion that the sentencing judge does not enjoy "unfettered discretion," that "[n]u-merous checks shield the defendant from an arbi-trary sentence," and that the judge does not have

[41] See n 15.

[42] It was also noted that there was insurance coverage for the stolen items, with a $100 deductible provision.

[43] Under the proposed revision of the guidelines, it would also have been zero to twelve months.

"uncontrolled discretion in this area"[44] are unpersuasive.[45]

### XIII

The majority has, in effect, authorized a sentencing judge to perceive and characterize the defendant as a liar and determine on that basis that he is not a good prospect for rehabilitation in every case where the defendant has been convicted following a trial at which he testified—without requiring or permitting an evidentiary inquiry or opportunity to refute those conclusions.

The Court should consider whether it would not be wiser to formally treat the assumed correlation between lying and prospects for rehabilitation as a sentencing guideline factor. The guideline could state that persons who are convicted after testify-

---

[44] *Ante,* pp 687, 693.

[45] Stitt also had no prior juvenile or adult offense history other than the instant offense. The sentencing guideline was zero to twelve months. In the few months following commission of the instant offense, Stitt was charged with committing arson, assault and battery on two occasions, and, one year later, with breaking and entering an occupied dwelling. The two assault and battery charges were dismissed before sentencing in the instant case. A nolle prosequi was entered in respect to the arson charge a few months after such sentencing on the same day that Stitt was convicted of breaking and entering an occupied dwelling, a crime for which a consecutive sentence of four to ten years was imposed. See *People v Lee,* 391 Mich 618, 631; 218 NW2d 655 (1974), where the Court addressed the issue of the consideration at sentencing of other criminal charges pending against the defendant.

Stitt was nineteen years old with a substance abuse problem and without steady employment. At the time of sentencing, Stitt and his attorney asked the judge to defer sentencing in accordance with the recommendation of the probation officer until it was determined "what's going to happen to the arson charge."

The judge declined to defer sentencing, stating that he was satisfied that Stitt had *lied to the jury and the presentence investigator.* He added that "[t]his is an assaultive offense and I'm satisfied that you have no scruples when it comes to your conduct and other peoples' rights. I think you're a threat to the community and for *that reason* I'm going to impose the maximum sentence that can be imposed here," namely, six years eight months to ten years. (Emphasis added.)

ing or offering evidence can be charged with additional points in the sentencing guidelines, either in every case or in the discretion of the judge. This would be less threatening to the adversary system and the exercise of trial rights and would provide at least some structure for the administration of this "attitudinal" factor, some potential limitation on the amount of additional prison time to be served, and some basis for sentence review.

## XIV

Our reluctance to move with greater alacrity in providing meaningful judicial review of sentencing decisions suggests that aspirations should be raised, not lowered, and counsels caution in legitimating a sentencing factor that can be applied in a manner threatening bedrock values.

An accused person has a constitutional right to an adjudication on the merits. He cannot, we all agree, be assessed increased punishment for exercising that right.

The defense of every defendant who stands before a judge for sentencing has been rejected and, ordinarily, disbelieved by the trier of fact. Permitting a special perjury sentencing assessment to be levied against defendants who testify but nevertheless are convicted when their defense is rejected— on the unproven premise that they are less promising prospects for rehabilitation than those defendants who either offer no defense or plead guilty sometime before a jury is empaneled or renders a verdict—unnecessarily deprecates the fundamental principle that no court may enter a judgment before both the people and the defense have had an unfettered opportunity to offer evidence and to have their witnesses, including the defendant, testify.

It is one thing to recognize and accept the

legitimate needs of the justice system.[46] It is quite another to legitimate yet another formulation that tends to discourage a defendant's exercise of trial rights and to claim, in doing so, that this new formulation will better determine defendants' prospects for rehabilitation.

Sentencing is important, critically important, but providing a forum for the adjudication of controversies is the principal business of the courts. Preservation of the integrity of the adversarial system—an important safeguard against government oppression—requires greater protection of and respect for a defendant's right to stand trial than is secured by today's decision.

Today's decision creates the disturbing prospect that a defendant may understandably refrain from offering truthful testimony in fear that he may be additionally incarcerated if he is perceived to have testified falsely.

I would remand for resentencing, stating that a sentencing judge may consider his perception of the defendant formed on the basis of his courtroom behavior but not his perception of the bona fides of the defendant's testimony or defense.

CAVANAGH, J., concurred with LEVIN, J.

---

[46] Classifying offenders awaiting sentencing on the basis whether they were convicted on their plea of guilty or following a trial at which their testimony or other defense was rejected may serve to discourage guilty persons from testifying or otherwise defending against a charge. Discouraging the "improvident" exercise of trial rights by guilty persons may serve the needs of the judicial system to reduce the number of "unnecessary" trials by encouraging guilty pleas by persons who should plead guilty (but see People v Snow, 386 Mich 586; 194 NW2d 314 [1972]; People v Courts, 401 Mich 57; 257 NW2d 101 [1977]), and by summarily punishing defendants, without another "time consuming" hearing, for the threat and affront to the administration of justice represented by their perjury or subornation of perjury.