# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT LOUIS WALDEN,

Defendant-Appellant.

FOR PUBLICATION
April 20, 2017

No. 330144
Monroe Circuit Court
LC No. 14-041572-FC

Before: O'CONNELL, P.J., and GLEICHER and BOONSTRA, JJ.

GLEICHER, J. (*concurring in part and dissenting in part*).

The majority makes a compelling case in support of the reasonableness of the "modest" departure sentence imposed in this case. It may well be that a poll of the judges on this Court would yield unanimous agreement that the departure sentence was thoroughly reasonable. My respectful disagreement centers on the rule of decision guiding the majority's analysis, and the standard of review the majority has employed.

The majority concedes that the principle of proportionality supplies the analytical framework that a trial judge must use when imposing a departure sentence. *People v Smith*, 482 Mich 292, 303; 754 NW2d 284 (2008). And although the majority doesn't explicitly say so, I assume that it would agree that "sentencing courts must justify the sentence imposed in order to facilitate appellate review." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). These precedents demand that a trial court justify a departure sentence by explaining why the sentence selected better fits the crime and the offender than would a guidelines sentence.

Here, the trial court failed to reference any grounds relevant to the principles of proportionality when it departed from the guidelines range. While I agree that OV 9 was correctly scored, I would remand for resentencing, tasking the trial court to explain why the departure sentence it imposed is more proportionate to the offense and the offender than a sentence within the guidelines. Further, I suggest that the majority has substituted its own well-crafted rationale for a departure sentence in place of the trial court's patently deficient explanation. A remand would permit us to approach defendant's sentence in a manner more consistent with our role.

The majority acknowledges that before departing from the minimum sentencing guidelines range, a trial court must engage in at least some reasoning consistent with the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). Our Supreme Court highlighted the integral role of proportionality analysis in *People v Babcock*, 469 Mich 247, 262; 666 NW2d 231 (2003):

> In determining whether a sufficient basis exists to justify a departure, the principle of proportionality—that is, whether the sentence is proportionate to the seriousness of the defendant's conduct and to the defendant in light of his criminal record—defines the standard against which the allegedly substantial and compelling reasons in support of departure are to be assessed.

Although the Supreme Court has eliminated "the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure," *Lockridge*, 498 Mich at 365, the Court did not endorse unexplained departures or departures predicated on improper grounds. Logically, a departure sentence lacking a pertinent rationale is unreviewable for reasonableness or for an abuse of discretion. "[T]he linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." *United States v Martin*, 520 F3d 87, 96 (CA 1, 2008).

The trial court explained the rationale for defendant Walden's departure sentence as follows:

> In this matter the sentencing guidelines are 43 to 107 months as . . . both attorneys have indicated. It's advisory at this point in time given the Lockridge case. [Defendant] had three misdemeanors but he was out on bond for aggravated assault at the time this thing occurred. . . . [T]he jury didn't buy the self[-]defense argument and I don't buy the self[-]defense argument. You know, it just doesn't make sense. I'm really disappointed that we didn't have more people come forward and testify. I don't know why they didn't. Mr. Bentley speculated why they might not have but as Mr. Sims indicated all lives matter and it's disappointing that they didn't come here and tell the truth. Not testifying for one person or the other, but just tell the truth as to what happened.

> Now, the Lockridge case says that I don't have to find a substantial and compelling reason to deviate from the guidelines anymore or I don't have to elucidate those reasons. However, I think just a couple of things that came out in trial; you testified yourself . . . that you got stabbed four times. I don't know if that's true or not true but I don't know why in God's name you'd be carrying a knife if you were the victim of being stabbed before.

> Once this thing took place there was immediately [sic] leaving the scene, changing the cars and as [the prosecutor] pointed out because it struck me as well, you were driven to Detroit by an anonymous or random person, which I don't believe in a million years. I don't think you told the truth there and I don't think

you really told the truth about the facts and circumstances as they went down at the time.

> All lives do matter. [The victim] will not see his child graduate from high school, get married, do all the things that you're still going to have an opportunity no matter what I do, you're still going to have an opportunity to see your children do. And that's just not right and that's just not fair but I can't make that right and I can't make it fair.

The court advanced four general reasons for departing from the guidelines: (1) defendant had three misdemeanor convictions and "was out on bond for aggravated assault at the time this thing occurred;" (2) "I don't know why in God's name you'd be carrying a knife if you were the victim of being stabbed before;" (3) "I don't think you really told the truth about the facts and circumstances as they went down at the time;" and (4):

> All lives do matter. [The victim] will not see his child graduate from high school, get married, do all the things that you're still going to have an opportunity [to do]. And that's just not right and that's just not fair but I can't make that right and I can't make it fair.

*Lockridge* commands us to review a departure sentence for "reasonableness." *Lockridge*, 498 Mich at 391-392. We measure "reasonableness" against the principles of proportionality detailed in *Milbourn* and *Babcock*, bearing in mind that the guidelines themselves incorporate proportionality principles and define the presumptively reasonable sentence range. *Babcock*, 469 Mich at 263-264. We conduct this reasonableness review under an abuse of discretion standard. A trial court abuses its discretion when it misinterprets or misapplies the law. *Bynum v ESAB Group, Inc*, 467 Mich 280, 283; 651 NW2d 383 (2002).

In applying the principles of proportionality, a departing court's reliance on facts subsumed within a defendant's guidelines score is misplaced:

> [D]epartures are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing. For example, as the dissent points out, a sentencing judge could legitimately depart from the guidelines when confronted by the unlikely prospect of a one hundred-time repeat offender, since the guidelines do not take such extensive criminal records into account. In addition, we emphasize that the guidelines should continue to reflect actual sentencing practice. To require strict adherence to the guidelines would effectively prevent their evolution, and, for this reason, trial judges may continue to depart from the guidelines when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime. [*Milbourn*, 435 Mich at 657.][1]

---

[1] In this same vein, the *Milbourn* Court quoted approvingly from Judge Shepherd's concurring opinion in *People v Rutherford*, 140 Mich App 272, 280-281; 364 NW2d 305 (1985):

MCL 769.34(3)(b) similarly provides:

> The court shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from facts contained in the court record . . . that the characteristic has been given inadequate or disproportionate weight.

Here, the trial court relied on facts either accounted for by the guidelines or irrelevant to the principles of proportionality.

Under PRV 5, defendant received 10 points for having three or four prior misdemeanor convictions. Under PRV 6, five points were scored because defendant was on bond and awaiting adjudication for a misdemeanor at the time he committed the sentencing offense. Perhaps these scores do not adequately account for the egregiousness of defendant's prior record. However, the trial court offered no reasoning that would allow us to reach that conclusion. The majority concedes this fact but deliberately ignores it; in the majority's view, "the trial court clearly felt this factor was given inadequate weight." I decline to read the trial court's mind or put words in its mouth, and respectfully suggest that doing so contravenes our standard of review. How can we determine whether the trial court abused its discretion when we do not know how it weighed the facts and how the facts bore on the nature of the offense and offender?

Under OV 1, defendant was scored 25 points for having stabbed the victim (the highest score available for that variable), and under OV 2, five points were assessed because defendant used a knife. Given that defendant's possession of a knife was accounted for in the guidelines (not once, but twice), what made this fact especially relevant to the seriousness of the offense or

---

> "If the guidelines did set binding limits on the trial court's discretion, I would be constrained to remand when the judge states reasons for departing from the guidelines which are already considered therein. The problem we face in these cases is that the guidelines include factors such as the severity of the offense, the past record of the defendant, and the sentences historically imposed throughout the state. If the trial judge justifies a departure from the guidelines by stating that he does so because of the nature of the offense and the record of the offender, the trial court has considered these factors twice. If we say that the trial judge may, in an individual case, place greater emphasis on any given factor by simply announcing on the record his intention to do so, the guidelines become nothing more than a litany of magic words used to mask the imposition of subjective, arbitrary and disparate sentences—the very problem which . . . the guidelines were designed to eliminate. If the sentencing judge is not held to have abused his discretion by emphasizing a factor already included in the guidelines as a basis for departing from them, and if the record is devoid of evidence showing whether a sentence beyond the guidelines is disparate, we are furnished with no basis other than our own subjective reactions upon which to base a decision. The risk of imposing an arbitrary and disparate sentence is thus shifted from the trial courts to the Court of Appeals." [*Milbourn*, 435 Mich at 658-659.]

the character of the offender?  The trial court has not told us.  It's not our job to guess, as doing so resembles de novo rather than discretionary review.

The trial court's third ground for departure was that it did not believe defendant's testimony.  I would hold that without further elaboration, this constitutes an improper ground for departure, as the court failed to explain whether defendant willfully offered false testimony that was material to the case.  See *People v Adams*, 430 Mich 679, 693; 425 NW2d 437 (1988).  The jury apparently credited defendant's testimony to some extent, as it convicted defendant of voluntary manslaughter rather than murder.  The trial court did not explain why its disbelief of defendant's testimony demonstrated that defendant was incorrigible, or harbored some other relevant character flaw.  Finally, the trial court's statement prefaced with "all lives do matter" touches on the seriousness of the offense.  But the same statement can be made in all homicide cases, and in my view these feelings do not supply a proper ground for departure from the sentencing range selected by the Legislature.

II

Further, I respectfully disagree with the majority's determination that the departure sentence is reasonable.  Absent any reasoning consistent with appropriate grounds for departure, I would hold that we have nothing to review.

It is the trial court's responsibility to justify a departure sentence.  We review the court's rationale under an abuse of discretion standard, focusing on the sentence's reasonableness.  *Lockridge*, 498 Mich at 392.  Where there is no explanation for a departure that qualifies as relevant, there has been an abuse of discretion.  Unlike the majority, I would refrain from finding a departure sentence reasonable by employing a form of de novo review to fill in the yawning gap created by the trial court's failure to explain its rationale in legally appropriate manner.  The majority implies that we may circumvent the trial court's omission by speaking for the trial court, supplanting an inadequate record with our subjective view of the reasonableness of defendant's sentence.  As appellate judges, we respect the role of trial courts by refraining from substituting our judgment for theirs.  "[A]bsent any explanation, we cannot do our job as an appellate court: we would be placed in the position of offering our own justifications for the sentence rather than reviewing the district court's reasons."  *United States v Boultinghouse*, 784 F3d 1163, 1179 (CA 7, 2015).

Finally, I fear that the majority has selected an easy case as a prototype for future appellate over-reaching.  Defendant was charged with open murder and convicted of voluntary manslaughter.  He killed a young man.  His self-defense claim was not terribly convincing.  The upward departure was only 13 months (although I am certain that even small differences in a sentence matter to a defendant).  Given these facts, it is easy to look the other way when a trial court reaches a result that may well be just, but fails to explain how it got there in a manner approved by our Legislature.  It is equally easy for us to abandon our responsibility to review only that which is truly reviewable—why not regard the trial court's omission as essentially harmless when we would have sentenced him in a similar way?

Absent an explanation that conforms to the rule of decision reflected in our sentencing principles, the trial court's sentence is improper and our review equally so.  Whether two or three

appellate judges feel a departure sentence is well-deserved is a retrospective and fundamentally subjective determination.

Proceeding down the majority's path is the first step on a slippery slope that would permit appellate judges to cherry-pick a record, finding reasons to enforcer our own judgments about why a departure was justified.. *Smith*, 482 Mich at 302. And the next case may not be quite as straight-forward, opening the door to a patchwork of inconsistent appellate judgments concerning the contours of "reasonableness" and a panoply of subjective and widely inconsistent sentences.

/s/ Elizabeth L. Gleicher