# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
September 11, 2018

v

No. 337137
Wayne Circuit Court
LC No. 16-008121-01-FC

CHRISTOPHER JAMES COLEMAN,

Defendant-Appellant.

Before: SWARTZLE, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of armed robbery, MCL 750.529, felonious assault, MCL 750.82, assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84, carrying a concealed weapon (CCW), MCL 750.227, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second notice, MCL 750.227b(1). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 22 to 40 years' imprisonment for each armed robbery conviction, 5 to 15 years' imprisonment for the felonious assault conviction, 22 to 40 years' imprisonment for the AWIGBH conviction, 22 to 40 years' imprisonment for the CCW conviction, 22 to 40 years' imprisonment for the felon-in-possession conviction, and a mandatory 5 years' imprisonment for felony-firearm, second notice, conviction. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

At about 7:00 p.m. on September 4, 2016, Alonte Reynolds and his girlfriend Shanequia McRunnnels were visiting outside the Detroit home of Alonte's cousins Dakia and Dominique Reynolds. A blue Saturn containing three men pulled up and parked near them. All four victims identified defendant as one of the men who got out of the blue Saturn and walked up to the victims. At gunpoint, defendant took Alonte's glasses, hat, shirt, and shoes, and the purses, phones, and a set of car keys from Dakia and Dominique. As the three men departed in the blue Saturn, Alonte chased them in his car, and exchanged shots with them. The driver of the blue Saturn disregarded a stop sign during the chase, and ran into a Malibu occupied by Christopher Moore and his girlfriend Christian Watson. Defendant fired shots into the passenger door of the Malibu, although no one was hit. As Alonte pulled up to the blue Saturn in his car, the three men exited the car and dispersed on foot. Alonte returned to his cousins' residence to get the other

-1-

three victims. They returned to the scene of the accident and spoke with Detroit Police Officers Kimberly Wright and Ronald Kopp. Officer Kopp left the scene to look for the suspects, saw defendant a couple of blocks over, and arrested him because he fit the victims' description.

Defendant testified on his own behalf at trial and denied involvement. He testified that he had been drinking and barbequing with friends at the home of his brother, Allen Nickols,[1] from early afternoon until about 7:30 pm. He stated that he was walking to a nearby store when he was arrested.

Before trial, defense counsel had provided notice that Nickols would testify as an alibi witness but decided not to call him because he had learned that Nickols would not testify as expected. The defense rested after defendant's testimony, but the prosecution then called Nickols to the stand as a rebuttal witness. Nickols testified that defendant was at his house that day but left between 7:00 a.m. and 9:00 a.m., not 7:30 p.m., to go to the store and never returned. Nickols also stated that only he and his family had been home that day, and they had not barbecued.

During deliberations, the jury requested the testimony of the arresting officer and asked the time of the arrest. The trial court responded, without objection from defense counsel, that the testimony would not be ready for weeks and the jury must rely on its collective memory. After more deliberation, the jury convicted defendant of all remaining counts.[2]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that his counsel's failure to investigate his alibi witness was ineffective because this decision fell below an objective standard of reasonableness and caused a miscarriage of justice. Alternatively, defendant argues that this failure to investigate resulted in a constructive denial of counsel under *United States v Cronic*; 466 US 648, 658; 104 S Ct 2039; 80 L Ed 2d 657 (1984). Finally, defendant argues that his counsel's failure to object to the way the judge responded to the jury when they asked for written testimony from the arresting officer denied him the effective assistance of counsel. As to all of defendant's claims, we disagree.

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo. *Id*. at 188. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). However, because defendant failed to move for a new trial or a hearing pursuant to *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922

---

[1] Nickols is actually defendant's nephew, but he was raised along with defendant by defendant's mother.

[2] Two counts of felonious assault against children present at the robbery were dropped on defendant's motion for directed verdict after the prosecution rested.

-2-

(1973) in the trial court, our review is limited to errors apparent from the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

Effective assistance of counsel is presumed, and criminal defendants have a heavy burden of proving otherwise. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). When claiming ineffective assistance of counsel, it is a defendant's burden to prove "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Solloway*, 316 Mich App at 188, citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290, citing *Strickland*, 466 US at 694–696. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

## A. FAILURE TO INVESTIGATE

Defendant first argues that defense counsel provided ineffective assistance of counsel where he filed a notice of alibi, subpoenaed the alibi witness, and told potential jurors of the alibi witness, but then did not call the alibi witness at trial. Defendant claims the first indication that the alibi witness would not testify favorably to defendant was when he testified as a rebuttal witness for the prosecution. Accordingly, defendant argues, he is entitled to a new trial. We disagree.

The failure to undertake a reasonable investigation may constitute ineffective assistance of counsel. *People v Trakhtenberg*, 493 Mich 38, 51-55; 826 NW2d 136 (2012). Defense counsel has a duty to conduct reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. *Id*. at 52. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (quotation marks, brackets, and citation omitted). The decision whether to call a witness is presumed to be a matter of trial strategy, and this Court will not substitute its judgment for that of defense counsel. *People v Bass*, 317 Mich App 241, 278; 893 NW2d 140 (2016). Failure to call a witness amounts to ineffective assistance of counsel only if it deprives the defendant of a substantial defense. *Payne*, 285 Mich App at 190. "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Jackson*, 313 Mich App 409, 432; 884 NW2d 297 (2015) (quotation marks and citation omitted).

Although defense counsel had subpoenaed Nickols as an alibi witness, he exercised his discretion regarding what witnesses to call and did not, in fact, call Nickols to testify at trial. Rather defendant testified on his own behalf and provided his own alibi. Therefore, defendant was not deprived of a substantial defense due to defense counsel's failure to call Nickols. *Payne*, 285 Mich App at 190. Moreover, in response to defendant's testimony, the prosecution called Nickols as a rebuttal witness, and Nickols completely contradicted defendant's alibi. It is entirely plausible that defense counsel knew that if he allowed Nickols to testify on behalf of defendant, he would have either perjured himself or not helped defendant in any way. Based on the foregoing, we cannot conclude that defense counsel's failure to call Nickols as an alibi

witness was objectively unreasonable, and defendant's claim of ineffective assistance of counsel fails.

## B. THE *CRONIC* ANALYSIS

Second, defendant raises an alternative argument: defense counsel's failure to investigate resulted in a constructive denial of counsel, and therefore his claim should be evaluated under *Cronic*, and not the rubric announced in *Strickland*. We disagree.

In rare cases, the *Strickland* analysis does not apply. The United States Supreme Court explained in 1984 that, when a defendant is constructively denied the effective assistance of counsel, the defendant is relieved of the burden of establishing a constitutional violation because circumstances exist "that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 US at 658. The *Cronic* Court identified three possible situations in which such a result might be justified. The first was "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id*. at 659 n 25. The second was when "counsel entirely fail[ed] to subject prosecution's case to meaningful adversarial testing." *Id*. at 659. The third was when counsel was called upon to provide assistance that no fully competent lawyer would be able to provide. *Id*. at 659-660, citing *Powell v Alabama*, 287 US 45; 53 S Ct 55; 77 L Ed 158 (1932).

Other than naming the alibi witness without investigation (and failing to object to the judge's response to the jury's request for specific testimony during deliberations, discussed below), defendant concedes that his counsel represented him adequately. Yet he argues that the trial process lost its "character as a confrontation between adversaries," see *Cronic*, 466 US at 656-657, because defense counsel effectively helped the prosecution by identifying an alibi witness that would instead contradict defendant's alibi testimony. In other words, defendant is arguing that the very magnitude of the alibi witness debacle requires the conclusion that his attorney entirely failed to subject the prosecution's case to meaningful adversarial testing under *Cronic* and its progeny, specifically *Bell v Cone*, 535 US 685; 122 S Ct 1843; 152 L Ed 2d 914 (2002). These cases do not support defendant's argument.

In *Cronic*, the United States Supreme Court determined that, "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Cronic*, 466 US at 659 (emphasis added). The plain language of *Cronic* directly contradicts defendant's position. *Cronic* indicates that only an *entire* failure to subject a case to meaningful adversarial testing would suffice in order for a court to relieve a defendant of the burden to prove that counsel acted unreasonably and the defendant was prejudiced. *Id*. Additionally, the short discussion of the second circumstance in *Cronic* is dictum. The holding in *Cronic* relates to the third potential circumstance, not the second. See *People v Lewis*, 501 Mich 1, 8; 903 NW2d 816 (2017) (the *Cronic* Court's statements about the first circumstance, complete denial of counsel, were dicta because *Cronic* concerned the third circumstance, not the first).

*Bell*, on the other hand, does involve the second circumstance described in *Cronic*, as does the instant case. *Bell*, 535 US 685. In *Bell*, the defendant's complaint about his representation was limited to his attorney's representation during the sentencing hearing. *Id*. at

690-691. At sentencing, trial counsel "called to the jury's attention the mitigating evidence already before them." *Id*. at 691. Counsel asked the jury to extend mercy because of the defendant's extreme mental disturbance and drug addiction, both of which resulted from his service in the Vietnam war. Defense counsel also cross-examined the prosecution's witnesses during this hearing, eliciting the fact that defendant had been awarded a Bronze Star for his service. Further, the defense counsel successfully fought the state's proffer of photos of the victims' decomposing bodies. *Id*. After a junior prosecutor gave a "low-key" closing, defense counsel waived final argument. *Id*. at 691-692. This prevented the lead prosecutor, known as a very effective advocate, from arguing in rebuttal. *Id*. at 692. The defendant was sentenced to the death penalty, after which the Tennessee Supreme Court affirmed both the convictions and the sentence, and the United States Supreme Court denied certiorari. *Id*.

After a number of post-conviction proceedings, including one in which the defendant sought a writ of habeas corpus in federal court, the Sixth Circuit reversed with respect to his sentence only. *Id*. at 693. The Sixth Circuit held that trial counsel "did not subject the State's call for the death penalty to meaningful adversarial testing" under *Cronic* because he failed to ask for mercy after the prosecution gave its final argument. *Id*. The Supreme Court reversed, in part because "[w]hen we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be *complete*." *Id*. at 696-697 (emphasis added). In *Bell*, the Court explained, the failure was not complete because counsel did not "fail[] to oppose the prosecution throughout the sentencing proceeding as a whole," but only at specific points during the proceeding. *Id*. at 697. Because *Bell* reaffirmed the language of *Cronic* requiring the failure of meaningful adversarial process to be *entire*, defendant's reliance on *Bell* is also misplaced.

The Michigan Supreme Court also adopted *Bell's* rule that the failure must be entire in order for *Cronic* to apply. *Frazier*, 478 Mich at 244. Our Supreme Court said, "The *Cronic* test applies when the attorney's failure is complete, while the *Strickland* test applies when counsel failed at specific points of the proceeding." *Id*., citing *Bell*, 535 US 697. Our Supreme Court explained that in *Frazier*, the "counsel's performance should have been reviewed under the *Strickland* standard" because the defendant "allege[d] only that counsel erred at a specific point of the proceeding by advising him that he could waive his right to counsel at the interrogation." *Frazier*, 478 Mich at 245. Like the defendants in *Bell* and *Frazier*, defendant does not argue that his attorney's failure was entire, but argues instead that counsel's failure to investigate the alibi witness in and of itself was sufficient to destroy the adversarial process and deny defendant a fair trial. His argument is without merit.

Moreover, the *Bell* Court explained that the challenged error by the attorney was "plainly of the same ilk as other specific attorney errors" that have been held subject to the *Strickland* analysis. *Id*. at 698. That is also true in the instant case; the alleged error of failure to investigate a witness has been analyzed under the *Strickland* test, including in *Strickland* itself. *Strickland*, 466 US at 69. See also M*cGhee*, 268 Mich App at 625-626 (using the *Strickland* standard to determine whether counsel's failure to investigate was ineffective assistance) and *People v Grant*, 470 Mich 477, 484-485, 498; 684 NW2d 686 (2004) (holding under the *Strickland* analysis that counsel's failure to investigate was unreasonable and prejudiced the defendant). Our own Supreme Court has said, "The [United States] Supreme Court has rejected a categorical prophylactic approach to claims of counsel's deficient performance *and of failure to adequately*

-5-

*prepare or investigate* in favor of an inquiry into actual performance and prejudice." *People v Mitchell*, 454 Mich 145, 158; 560 NW2d 600 (1997) (emphasis added) (holding that the defendant "must affirmatively demonstrate that counsel's performance was objectively unreasonable and so prejudicial as to deprive him of a fair trial").

For all of these reasons, defendant's argument that *Cronic* applies to the instant case is meritless. Only the *Strickland* analysis is applicable, and, as explained above, defendant's claim fails under the *Strickland* analysis.

### C. FAILURE TO OBJECT

Defendant next argues that he received ineffective assistance of counsel when his attorney failed to object to the trial court's refusal to allow the jury to re-examine the testimony of the arresting officer. Again, we disagree.

During deliberations, the trial court responded to the jury's request for Officer Hopp's testimony and the time of the arrest as follows:

> As to Officer Hopp's testimony, it has not been printed out yet, so you'll have to rely on your collective memory, okay. And what time was [defendant's] arrest? Same thing, okay. Officer Hopp I think is the person who arrested [defendant], so you'll have to rely on your—we'll keep this. Okay."

Defense counsel neither agreed nor objected to the trial court's response.

MCR 2.513(P) states:

> If, after beginning deliberation, the jury requests a review of certain testimony or evidence that has not been allowed into the jury room under subrule (O), the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may make a video or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, may be made available to the jury for its consideration. The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

The Michigan Supreme Court has held instructions very similar to those given in the instant case to be error under the previous version of MCR 2.513(P).[3] *People v Carter*, 462

---

[3] The previous version of this court rule was MCR 6.414(H), which stated:

> If, after beginning deliberation, the jury requests a review of certain testimony or evidence, the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may order

Mich 206, 213 n 10; 612 NW2d 144 (2000).  In *Carter*, the trial court said to the jury, in relevant part:

> With regard to the remainder of the note, which again asks for various people's testimony . . . one of the things the court explained to you in the beginning, that the *transcripts will not be typed for some weeks and months way into the future* and you must listen very carefully because *you must rely on your collective memories to resolve any issues with regard to that.*
>
> So that is the court's response to your question.  You now may return to the jury room and resume your deliberations. [*Id*. at 213 (emphasis added).]

Our Supreme Court agreed, determined that the trial court's response to the jury was deficient, and cautioned:

> While it is true that trial transcripts often are not prepared until well after trial, we caution against instructing the jury in this manner as such instruction forecloses to the jury the possibility of later reviewing the requested testimony, e.g., by having the court reporter read back the testimony, and consequently, violates the court rule. [*Id*. at 213, n 10.]

In the instant case, the judge's response also violated MCR 2.513(P) because the judge failed to inform the jury that they could ask again if, after more deliberation, they still believed they needed the testimony.  *Id*.  See also *People v Howe*, 392 Mich 670, 677-678, 221 NW2d 350 (1974).  The case law is clear that the rule requires a trial court to specifically state that the jury can ask again later if they cannot reach a verdict without the testimony they seek.  See, e.g., *People v Joseph*, 114 Mich App 70, 74-75; 318 NW2d 609 (1982) (finding no error when the trial court twice instructed the jury to continue deliberations and request the rereading of the testimony again if necessary) and *People v Robbins*, 132 Mich App 616, 620-621; 347 NW2d 765 (1984) (finding no error when the trial court instructed the jury to continue attempting to discuss and resolve any problems with the requested testimony, and make another request to rehear the testimony if they still had problems after further deliberations).

"Deviation from a legal rule is 'error' unless the rule has been waived."  *Carter*, 462 Mich at 214, quoting *United States v Olano*, 507 US 725, 732-733; 113 S Ct 1770; 123 L Ed 2d 508 (1993).  The trial court's response to the jury's request was error but, unlike in *Carter*, the issue was not waived but merely forfeited when defense counsel failed to object.  See *Carter*, 462 Mich at 215, citing *People v Carines*, 460 Mich 750, 762-763; 597 NW2d 130 (1999).

---

> the jury to deliberate further without the requested review, so long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed. [*Carter*, 462 Mich at 210.]

"Mere forfeiture . . . does not extinguish an 'error.' " *Carter*, 462 Mich at 215, citing *Olano*, 507 US at 733.

Defendant argues that counsel's error in not objecting requires automatic reversal. Relying on *Howe*, 392 Mich 670, and *People v Smith*, 396 Mich 109; 240 NW2d 202 (1975), defendant states that this error would have required automatic reversal had defendant's counsel objected to the judge's response. This position is erroneous, however. The automatic reversal rule set forth in *Howe* and *Smith* was superseded by the plain error rule set forth in *Carines*. *People v Tucker*, 469 Mich 903; 669 NW2d 816 (2003).

Additionally, defendant's claim is one of ineffectiveness of counsel, and he must, therefore, establish both elements of his ineffectiveness claim: that his counsel unreasonably erred in not objecting to the trial court's erroneous response, and his attorney's failure to object to the trial court's response to the jury prejudiced him. *Garza*, 246 Mich App at 255. Defendant fails to establish either element of his ineffectiveness claim. First, he fails to rebut the presumption that the challenged decision was a product of sound trial strategy. See *Plummer*, 229 Mich App at 308. Defendant claims that it cannot reasonably be argued that his trial counsel had a legitimate strategic reason not to object to the instruction. Yet plaintiff offers a plausible reason. The jury asked for Officer Hopp's testimony and the time of the arrest. As the arresting officer, Officer Hopp would have been the person to testify as to the time of the arrest. As plaintiff points out, Officer Hopp's testimony did not include the time of the arrest, but it did include a statement that he had arrested defendant after hearing a description over the radio that matched defendant. The jury's review of this testimony, therefore, would not have helped defendant but would have placed additional emphasis on the fact that defendant matched the description given by multiple victims. Because it is plausible that defense counsel chose not to object for this reason, defendant failed to establish that his counsel's performance fell below the standard of reasonableness. Moreover, defendant has also failed to present an argument that, "but for the error, the result of the proceedings would have been different and [] the proceedings were fundamentally unfair or unreliable." See *Garza*, 246 Mich App at 255. Based on the foregoing, defendant's claim of ineffective assistance of counsel fail.

## III. IMPROPER SENTENCING CONSIDERATIONS

Finally, defendant argues that the trial court violated his Fifth Amendment right against self-incrimination by improperly considering his failure to admit guilt and improperly punishing defendant for exercising his right to a trial. Again, we disagree.

Whether the trial court employed improper considerations when sentencing a defendant is a question of law, and is therefore reviewed de novo on appeal. *People v Harris*, 224 Mich App 597, 599; 569 NW2d 525 (1997), overruled in part on other grounds by *People v Comer*, 500 Mich 278; 901 NW2d 553 (2017). Unpreserved issues of constitutional law, however, are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. This issue is not preserved because defendant did not object to the trial court's consideration of improper information in sentencing. See *People v Edmonds*, 93 Mich App 129, 135-136; 285 NW2d 802 (1979).

Proper factors for consideration in sentencing include "(1) the potential for the reformation of the offender, (2) the protection of society, (3) the discipline of the wrongdoer, and (4) the deterrence of others from committing like offenses." *People v Wesley*, 428 Mich 708, 713; 411 NW2d 159 (1987). A trial court may exercise considerable discretion in sentencing, but that discretion is not unfettered. *People v Adams*, 430 Mich 679, 687; 425 NW2d 437 (1988). "Numerous checks shield the defendant from an arbitrary sentence and help to insure that the objective of personalized disposition is achieved." *Id*. The presentence report and the guidelines help to ensure that the sentencing judge has a broad and fair understanding of the defendant and the circumstances of the crime. In addition there is jurisprudence to "limit consideration of factors deemed inappropriate in sentencing." *Id*. A defendant's refusal to admit guilt is one such factor. *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007) ("A sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt.").

A reviewing court considers three factors to determine whether a sentencing judge was influenced by a defendant's continued assertion of innocence. *People v Payne*, 285 Mich App 181, 194; 774 NW2d 714 (2009). They are " '(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe.' " *Id*., quoting *Wesley*, 428 Mich at 713. However, a trial court can take into consideration a defendant's lack of remorse in imposing a sentence. *Wesley*, 428 Mich at 714. Resentencing is not warranted when "nothing in the record suggests that the trial court would have been more lenient had defendant admitted guilt." *Payne*, 285 Mich App at 194.

Here, defendant continued to maintain his innocence when testifying at trial. However, the record before us is clear that the trial court made no attempt to get defendant to admit his guilt and gave no indication that the sentence would be lighter if defendant did so. When asked if he had anything to say at sentencing, defendant briefly apologized to the victim and asked for leniency. The trial court responded by stating its agreement with the prosecutor that defendant was a menace to society because defendant's actions could have seriously injured or killed a number of people, and that nothing defendant could say would make the court extend mercy in this case. This was followed by a statement that defendant had a right to a trial, but still had not accepted responsibility, and went to court "praying like hell a jury wouldn't convict you." The trial court also mentioned defendant's failed attempt to have his nephew provide him with an alibi. In all of the court's comments, there is neither a direct nor an implicit request for defendant to admit his guilt.

Likewise there was no indication of any kind that the defendant would have received a more lenient sentence had he admitted guilt. To the contrary; the trial court said that *nothing* defendant could say would have convinced the court to show mercy in this case. The trial court's main motivation in sentencing defendant appears to have been the protection of society and the discipline of the wrongdoer, both proper considerations. *Wesley*, 428 Mich at 713. Additionally, although the trial court did not specifically mention other appropriate considerations, it was also aware of his low potential for rehabilitation because of defendant's status as a fourth-offense habitual offender, MCL 769.12, and because previously, he had never successfully completed probation. Accordingly, we conclude that defendant has failed to establish the trial court committed plain error at sentencing that affected his substantial rights.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien
