*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
January 25, 2024

v

LAURENCE JOSEPH FRECHETTE III,

Defendant-Appellant.

No. 360905
Charlevoix Circuit Court
LC No. 2021-015214-FH

Before: GARRETT, P.J., and LETICA and MALDONADO, JJ.

PER CURIAM.

A jury convicted defendant, Laurence Frechette III, of aggravated domestic assault for grabbing the complainant and slamming her face into a cabinet. At sentencing, the trial court scored offense variable (OV) 19 on the basis that Frechette tried to avoid criminal responsibility by providing false testimony in his defense. The trial court then departed upward from the sentencing guidelines and imposed a minimum 18-month term of imprisonment. Frechette challenges his conviction and sentence on several grounds. Although we affirm Frechette's conviction, we conclude that OV 19 was improperly scored, so we vacate his sentence and remand for resentencing.

## I. FACTUAL BACKGROUND

Frechette's conviction resulted from the physical assault of the complainant. Frechette and the complainant were previously in a dating relationship, and Frechette still lived in the complainant's home, along with her daughter and mother, at the time of the incident.

On November 7, 2020, the complainant and Frechette were consuming alcohol during morning activities. While in the kitchen, she became concerned that Frechette's intoxication was causing him to become belligerent. The complainant took a drink from his hand, but Frechette grabbed her arm and pinned it behind her back. Frechette then grabbed the back of her neck with his other hand, forced her to walk ten feet, and slammed her face into a wine cabinet. The complainant fell to the floor and yelled for her teenage daughter to call 911. The complainant's daughter came downstairs while recording a video on her cell phone; she observed Frechette standing over the complainant, saw that the complainant was bleeding, and called 911. At trial,

-1-

the complainant and her daughter also testified about other acts of physical and verbal abuse committed by Frechette against them.

Frechette denied assaulting the complainant and theorized that the complainant tripped and fell as a likely result of intoxication. Before trial, Frechette moved for the trial court to review the complainant's medical records since 2017. He argued that the complainant had a history of falling when consuming alcohol with prescription medications, and her medical records were likely to contain material information about these prior falls that could support Frechette's defense. The trial court denied the motion.

Frechette's story at trial was that on the morning in question, the complainant ran into him in the kitchen as he was taking a sip of his drink. The complainant then walked away toward the dining room, and he heard a sound "as if she tripped." According to Frechette, the complainant demanded that he drive her to a medical clinic. He told her that the clinic was closed and did not take her insurance, and that he was too intoxicated to drive, but she threatened to call the police if he did not drive her. Ultimately, Frechette believed that the complainant and her daughter colluded to get him arrested.

The jury did not accept Frechette's version of events because, as noted, it found him guilty of aggravated domestic assault. At sentencing, the trial court sua sponte scored OV 19 at 10 points on the basis that Frechette told a "totally false, concocted story about being set up" by the complainant and her daughter. Frechette's guidelines range was 0 to 11 months, but the trial court departed upward and sentenced him to 18 to 60 months' imprisonment. Among other justifications, the court found that Frechette's assault of the complainant was the "culmination of a pattern and long history of domestic violence" against the complainant and others.

Frechette now appeals as of right.

II. SUFFICIENCY OF THE EVIDENCE

Frechette first argues that insufficient evidence supported his conviction of aggravated domestic assault.

We review a sufficiency-of-the-evidence challenge de novo, meaning "we do not defer to any decision made by the trial court, but instead employ our independent judicial views while employing the well-settled standards for deciding sufficiency issues." *People v Harverson*, 291 Mich App 171, 176; 804 NW2d 757 (2010). In determining whether sufficient evidence was presented to support a conviction, we view the evidence in a light most favorable to the prosecution, with any conflicts in the evidence resolved in the prosecution's favor, and to determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt. *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Aggravated domestic assault occurs when a defendant:

assaults his or her spouse or former spouse, an individual with whom he or she has or has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of the same household without a weapon and inflicts *serious or aggravated injury* upon that individual without intending to commit murder or to inflict great bodily harm . . . . [MCL 750.81a(2) (emphasis added).][1]

Frechette's sufficiency argument is limited to the "serious or aggravated injury" element. In the context of aggravated assault, this Court has defined a serious or aggravated injury as a "physical injury that requires immediate medical treatment or that causes disfigurement, impairment of health, or impairment of a part of the body." *People v Norris*, 236 Mich App 411, 415 n 3; 600 NW2d 658 (1999). See also M Crim JI 17.6 (providing the same definition for the model jury instruction on aggravated assault).

Sufficient evidence was introduced to prove that the complainant suffered a serious or aggravated injury at the hands of Frechette. Trial testimony established that Frechette injured the complainant by holding one of her hands behind her back, and using his other hand to grasp the back of her neck, while he forced her approximately ten feet through the kitchen to thrust her face into a cabinet. The complainant testified that the blow knocked a contact lens from her eye and left her bleeding as she lay on the floor. She described her physical injuries as a bruised face, a cut on her cheek, and a giant bump on her forehead. Her daughter called 911 and reported that the complainant had "bleeding under the eye" and a "massive bruise." The responding police officer noticed upon arrival that the complainant had a "large goose egg" on her forehead, with blood around her nose and a cut under her eye. Upon speaking further with the complainant, the officer noted that her injuries were "quite substantial" and that she seemed to be in shock. The examining paramedic noted that the complainant was bleeding and listed her injuries as a contusion on the forehead with bruising and swelling, three cuts below her eye, and elevated heart rate and blood pressure. The jury also saw photos, some taken by the officer on the day of the incident and others taken by the complainant several days later, of the injuries to the complainant's face. There was ample evidence of a serious physical injury suffered by the complainant.

Frechette asserts that the complainant did not receive immediate medical treatment for her injuries, completely overlooking the treatment rendered to the complainant by the paramedic. The responding police officer observed the complainant's injuries and called for an ambulance once the scene was secure. The paramedic treated the injuries on the complainant's forehead with ice, dressed the lacerations, and recommended that the complainant be transported to the hospital for further evaluation. The complainant reported that she refused further treatment because she wanted to stay with her mother and upset daughter, and, as a nurse herself, knew to monitor her symptoms for signs of worsening. Although the complainant declined to be transported to the hospital, a jury could reasonably conclude that the paramedic's recommendation for additional treatment supported that the complainant's injuries did, in fact, "require[] immediate medical

---

[1] The trial court also found that Frechette had a qualifying prior conviction that enhanced the offense from a misdemeanor to a felony. See MCL 750.81a(3).

treatment." *Norris*, 236 Mich App at 415 n 3. Notably, "the need to seek immediate medical attention is only one factor used in determining whether the element is established." *People v Brown*, 97 Mich App 606, 611; 296 NW2d 121 (1980).[2]

Frechette also cites multiple unpublished decisions of this Court in which an aggravated injury involved more serious harm than the complainant suffered, such as a loss of consciousness or broken bones. The fact that the complainant's injuries in this case were less severe than other victims of aggravated assault does not mean that she did not sustain a sufficient injury to support Frechette's conviction. There will necessarily be a spectrum of injuries that satisfy the "serious or aggravated injury" requirement. The evidence need not be overwhelming; so long as a jury can reasonably conclude from the evidence that the complainant suffered a "physical injury that requires immediate medical treatment," sufficient evidence of a serious or aggravated injury has been shown. That threshold was met in this case.[3]

Next, Frechette contends that the trial court impermissibly permitted the jury to consider evidence of the complainant's emotional stress from the assault as proof of serious or aggravated injury. Frechette does not clearly explain how this argument undermines the sufficiency of the evidence. Instead, his position seems to be more of a challenge to the relevance of the evidence relating to the complainant's mental health or to the propriety of how the prosecutor argued that evidence.

During the complainant's testimony, Frechette preserved his evidentiary challenge by objecting to the relevancy of emotional injury. Preserved evidentiary challenges are reviewed for an abuse of discretion, meaning we will not disturb the trial court's decision to admit evidence unless it fell outside the range of principled outcomes. *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019). Evidence that is relevant is generally admissible at trial. See MRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Under this broad definition," evidence that is useful in shedding light on any material point is relevant. *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001).

The complainant testified that, in the time following the attack, she was "a nervous wreck." She experienced long-lasting emotional side effects, with symptoms manifesting in a loss of appetite, nausea, and vomiting. The complainant also testified that she was treated after the assault for depression. Evidence of the complainant's mental and emotional health was relevant to her credibility about whether she was assaulted. Put differently, evidence that the complainant experienced emotional trauma after the incident tended to make her testimony that Frechette

---

[2] *Brown* is not strictly binding because it was issued before November 1, 1990, but as a published opinion, it retains precedential effect under the rule of stare decisis. *People v Darga*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 363178); slip op at 9 n 6.

[3] Notably, the jury had the option to convict Frechette of the lesser-included offense of domestic assault, which lacks the "serious or aggravated injury" element of aggravated domestic assault, but chose not to do so. See MCL 750.81(2).

assaulted her more probable. See MRE 401. And the question of whether Frechette assaulted the complainant, or instead whether she tripped and fell, was the crux of the dispute at trial. The trial court therefore did not abuse its discretion by allowing the complainant to testify about her emotional injury.

Frechette also claims that the prosecutor improperly argued that the complainant's emotional stress constituted a serious or aggravated injury. Because Frechette never objected to the prosecutor's argument at trial, this issue is unpreserved and reviewed for plain error affecting substantial rights. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). Error is plain if it is clear or obvious. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The touchstone of a claim of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). Prosecutors have "great latitude regarding their arguments" in closing and "are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

In this case, the prosecutor stated in her closing argument that a serious or aggravated injury was a "physical injury that requires immediate medical treatment," and described the bump, cut, and bruises sustained by the complainant. "Not only did [the complainant] have these physical effects," the prosecutor continued, "[b]ut she also had some emotional effects and was depressed and sought medication support," which "has helped her sleep at night after being assaulted." The prosecutor's aside about the complainant's treatment for depression was an accurate reflection of the complainant's testimony and underscored the severity of the attack that produced the physical injury. Frechette has not established any clear or obvious error in this regard. Even assuming the prosecutor's comment was improper—if one interprets the comment as suggesting that emotional injury could prove a serious or aggravated injury—Frechette is not entitled to relief. The prosecutor told the jury that a serious or aggravated injury had to be a *physical* injury, and the trial court correctly instructed the jury on this element of the offense. "Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (cleaned up).

In sum, the prosecution presented sufficient evidence to support the jury's conviction, and Frechette has shown no error related to the admission of evidence or the prosecutor's argument about the complainant's emotional injury.

## III. COMPLAINANT'S MEDICAL RECORDS

Next, Frechette contends that the trial court erred by denying his motion to review the complainant's medical records.

We review a trial court's decision to conduct or deny in camera review of records for an abuse of discretion. *People v Davis-Christian*, 316 Mich App 204, 207; 891 NW2d 250 (2016). "There is no general constitutional right to discovery in a criminal case," *People v Elston*, 462 Mich 751, 765; 614 NW2d 595 (2000), and "defendants generally have no right to discover privileged records absent certain special procedures, such as an in camera review of the privileged

-5-

information conducted by the trial court," *Davis-Christian*, 316 Mich App at 207-208. MCR 6.201(C) sets forth these procedures. "If a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records." MCR 6.201(C)(2). See also *People v Stanaway*, 446 Mich 643, 649-650; 521 NW2d 557 (1994). If the court reviews the records in camera and determines that "the records reveal evidence necessary to the defense, the court shall direct that such evidence" be turned over to the defendant. MCR 6.201(C)(2)(b).

Before trial, Frechette requested the unredacted EMS report from the day of the incident, along with the complainant's medical records since 2017. Specifically, Frechette sought to compel "records of two separate falls complain[an]t had at home that resulted in injuries, her prescription medicine and over the counter medicine history, diagnoses from 2017 to present, complainant's health history/problem list, social history and physical examinations." Frechette alleged that these records were material because the complainant had a history of falls, as well as a history of consuming alcohol and medicine, which when combined could cause falls. Consistent with the outlined procedures, Frechette asked the trial court to review the medical records in camera.

At a pretrial hearing, Frechette testified that he was a nurse for 15 years, and he was aware of the complainant's medical conditions and the daily medications that she was taking on the day of the incident. He explained that her alcohol consumption magnified the effects of the medications, making her susceptible to falls. Frechette testified that the complainant previously sought medical treatment for falls on two occasions—one in February 2017 and another in May 2017 or 2018. The February 2017 treatment stemmed from the complainant falling down the stairs while she had been drinking alcohol. According to Frechette, the complainant reinjured herself in May 2017 or 2018 when she again fell down the stairs. Because Frechette believed that the complainant tripped or fell into the cabinet during the relevant incident, he claimed that he needed access to her medical records to establish that she had "a propensity to fall because of her lifestyle and because of some health issues." The prosecution agreed to supply the unredacted EMS report but otherwise opposed Frechette's request. The trial court denied Frechette's motion, concluding that he did not meet his burden under MCR 6.201(C)(2) to show a reasonable probability, grounded in articulable fact, that the complainant's privileged medical records were likely to contain material information necessary to his defense.

The trial court did not abuse its discretion by refusing to review the complainant's medical records in camera. First, Frechette's request was not sufficiently grounded in articulable fact. While Frechette testified that the complainant had twice previously fallen down stairs, at least once while drinking, and sought treatment for resultant injuries, he never testified about the medications she had taken on those occasions. Nor did he explain why medical records about the complainant's prior falls would contain evidence about the intermingling of alcohol with prescription medications. Frechette's request was also remarkably expansive; he asked the trial court to review more than four years of the complaint's medical records when he was alleging that two falls occurred in 2017 or 2018. Frechette's broad request did not justify the trial court scouring the complainant's medical records to search for evidence of injuries attributable to combining alcohol with medication. Mere general assertions do not justify disclosure of protected records, because that would be akin to a "fishing expedition to see what may turn up." *Davis-Christian*, 316 Mich

App at 208 (cleaned up). Frechette's request was overly broad and insufficiently specific to justify in camera review under MCR 6.201(C)(2).

Second, Frechette did not establish that the complainant's medical records were likely to contain information that was material and necessary to his defense. "Material" evidence in this context means "exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Stanaway*, 446 Mich at 666. Both alleged falls by the complainant involved the stairs, while the present incident involved no such structural hazard. The falls also took place at least two to three years before the subject November 2020 incident. Assuming the complainant's medical records even included information about these falls and the complainant's consumption of alcohol and prescription medication, we question whether the circumstances were sufficiently similar to be relevant to the incident in question. Even so, the complainant admitted at trial that she had fallen down the stairs a few years earlier while intoxicated and carrying laundry. She stated that the stairs had no handle at the time, but one was installed after the fall. Thus, the jury heard evidence that the complainant previously fell while intoxicated and did not find that this evidence "raise[d] a reasonable doubt about the defendant's guilt." *Id*. We therefore do not believe that the complainant's medical records were likely to contain material information necessary to Frechette's defense. Accordingly, the trial court did not abuse its discretion by declining to conduct an in camera review of the complainant's medical records.

## IV. SENTENCING ISSUES

Finally, Frechette claims that the trial court erred in two respects—by improperly scoring OV 19 and imposing an unreasonable departure sentence—that each entitle him to resentencing.

## A. MOOTNESS

Before turning to the merits, we note that Frechette has served his minimum sentence and was released from prison during the pendency of this appeal.[4] Frechette remains on parole, however, with a supervision discharge date of September 29, 2024. We must therefore consider whether Frechette's challenges to his sentence are moot.

Mootness is a threshold issue that a court addresses before reaching the substantive issues. *People v Richmond*, 486 Mich 29, 35; 782 NW2d 187 (2010). We generally decline to consider issues that have become moot. *People v Smith*, 502 Mich 624, 631; 918 NW2d 718 (2018). An issue is moot "if no controversy exists and any judgment on the matter would lack practical legal effect." *Id*. But an issue is not moot "if it will continue to affect a party in some collateral way." *People v Cathey*, 261 Mich App 506, 510; 681 NW2d 661 (2004).

In *People v Parker*, 267 Mich App 319, 329; 704 NW2d 734 (2005), this Court held that the defendant's challenge to his departure sentence was not moot, even though the defendant had

---

[4] According to records from the Michigan Department of Corrections, Frechette was paroled on June 29, 2023. Michigan Department of Corrections, Offender Tracking Information System <https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=700046> (accessed January 11, 2024).

served his minimum sentence and been paroled, because parole imposed "continuing limitations on his freedom." The Court reasoned that "[h]ad [the defendant] received an intermediate sanction, as he contends he should have, he might not be subject to any limitations at all." *Id.* Consistent with *Parker*, we conclude that Frechette's sentencing arguments are not moot. Because Frechette remains on parole and subject to "continuing limitations on his freedom," a decision on his sentencing arguments would not lack practical legal effect. *Id.* For instance, Frechette is subject to the possibility of parole revocation, meaning he could return to prison for the remainder of his maximum sentence if it was proven that he violated a condition of his supervision. See *People v Clark*, 315 Mich App 219, 229; 888 NW2d 309 (2016). We find persuasive this Court's application of *Parker* in *People v Kucharski*, unpublished per curiam opinion of the Court of Appeals, issued December 29, 2020 (Docket No. 346708).[5] There, as here, the defendant served his minimum sentence but remained on parole at the time of his appeal. *Id.* at 3. This Court reasoned that the defendant's sentencing challenges were not moot because "[h]ad a lower guidelines range persuaded the trial court to impose a lesser sentence, defendant might well have avoided the burdens of parole lasting until that date." *Id.* at 4. We agree and now turn to the substance of Frechette's arguments.

### B. OV 19

Frechette contends that the trial court erroneously assessed 10 points for OV 19.

"This Court reviews for clear error a trial court's findings in support of a particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v McFarlane*, 325 Mich App 507, 531-532; 926 NW2d 339 (2018). Clear error exists when we are "left with a definite and firm conviction that a mistake was made." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). Under the sentencing guidelines, the trial court's factual findings must be supported by a preponderance of the evidence. *People v Lydic*, 335 Mich App 486, 490; 967 NW2d 847 (2021). The trial court may draw "reasonable inferences arising from the record evidence" to sustain the scoring of an offense variable. *People v Barnes*, 332 Mich App 494, 499; 957 NW2d 62 (2020) (cleaned up).

OV 19 is scored at 10 points when the defendant "interfered with or attempted to interfere with the administration of justice . . . ." MCL 777.49(c). The plain meaning of "interfere with the administration of justice" is to "oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). Unlike most offense variables, which may only be scored considering the facts of the sentencing offense, OV 19 is scored for events that "almost always occur *after* the charged offense has been completed." *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). Common examples of conduct that justify a 10-point score for OV 19 include

---

[5] Although unpublished opinions of this Court are not binding, we may consider them for any persuasive value they hold. *People v Brcic*, 342 Mich App 271, 279 n 2; 994 NW2d 812 (2022); MCR 7.215(C)(1).

"actions that actively redirect the investigation; that attempt to or successfully conceal evidence from law enforcement; that attempt to or successfully prevent witnesses from testifying or providing evidence; and that attempt to or successfully prevent law enforcement from being able to arrest the defendant." *People v Deweerd*, 511 Mich 979, 980 (2023) (citations omitted).[6] But a defendant's general denial of guilt does not constitute interference or attempted inference with the administration of justice. *Id*. at 980 & n 3.

On its own accord, the trial court raised the issue of OV 19 and assessed 10 points. The court characterized Frechette's attempted interference with the administration of justice as trying to avoid accountability by telling the jury "a totally false, concocted story about being set up" by the complainant and her daughter. Frechette "attempted to send the jury on a wild goose chase" and had no right to tell "a falsified story" at trial. The court found that Frechette's testimony was "totally inconsistent with the evidence in the case."

Frechette argues that the trial court's scoring of OV 19 effectively punished him for exercising his right to testify, present a defense, and maintain his innocence. "Whatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying *falsely*." *Nix v Whiteside*, 475 US 157, 173; 106 S Ct 988; 89 L Ed 2d 123 (1986). For that reason, our Supreme Court has long held that perjury is, under the proper circumstances, a permissible consideration at sentencing. *People v Adams*, 430 Mich 679, 693; 425 NW2d 437 (1988). Specifically, "when the record contains a rational basis for the trial court's conclusion that the defendant's testimony amounted to wilful, material, and flagrant perjury, and that such misstatements have a logical bearing on the question of the defendant's prospects for rehabilitation, the trial court properly may consider this circumstance in imposing sentence." *Id*. The trial court, however, does not have "uncontrolled discretion" when assessing the truth of a defendant's sworn testimony; for instance, there may be circumstances where the record does not support a finding that the defendant demonstrated a "flagrant willingness to lie under oath." *Id*.

The trial court clearly erred by scoring OV 19 at 10 points because it failed to explain how the inconsistencies in Frechette's testimony, or his telling of the events in question, constituted "wilful, material, and flagrant perjury." *Adams*, 430 Mich at 693. The fact that Frechette's testimony was inconsistent with the evidence presented by the prosecution is hardly surprising; Frechette maintained his innocence and denied assaulting the complainant. Frechette believed that the complainant injured herself when she tripped and fell. And he opined that the complainant and her daughter devised a plan to get him in trouble, which the trial court believed was "a totally false, concocted story." Clearly, the jury didn't credit Frechette's story either. But the jury's rejection of Frechette's testimony does not mean that he attempted to interfere with the administration of justice. See *Deweerd*, 511 Mich at 981 (rejecting a sweeping interpretation of OV 19 that would permit scoring OV 19 for a defendant "testifying at trial (if the jury rejects the testimony)"). See also *People v Baiz*, unpublished opinion of the Court of Appeals, issued January 9, 2007 (Docket

---

[6] This Supreme Court order constitutes binding precedent because it "include[s] a decision with an understandable rationale." *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006).

No. 262912), p 2 ("[T]hat the jury chose to believe one version does not necessarily make that version the truth—it simply makes that version more believable.").[7]

Because the trial court did not find that Frechette's testimony amounted to "wilful, material, and flagrant perjury" that constituted an attempt to interfere with the administration of justice, a preponderance of the evidence did not support an assessment of 10 points for OV 19. Requiring the trial court to make sufficient findings that a defendant perjured himself in order to score OV 19 is consistent with *Adams* and properly balances the defendant's right to testify in his own defense with the obligation to testify truthfully. Therefore, on this record, we are definitely and firmly convinced that the trial court erred by scoring OV 19 at 10 points. When a scoring error occurs, resentencing is required if the corrected score alters the sentencing guidelines range. *People v Francisco*, 474 Mich 82, 89-91; 711 NW2d 44 (2006). At sentencing, Frechette's minimum guidelines range was 0 to 11 months' imprisonment. Reducing his OV score by 10 points changes his OV level from level IV to level III, and the guidelines range goes down to 0 to 9 months' imprisonment. See MCL 777.66. Accordingly, Frechette is entitled to resentencing.[8]

We affirm Frechette's conviction, but vacate his sentence and remand to the trial for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Anica Letica
/s/ Allie Greenleaf Maldonado

---

[7] This case is also unlike *People v Underwood*, 278 Mich App 334, 338-340; 750 NW2d 612 (2008), where this Court held that OV 19 may be scored for a defendant *convicted* of perjury.

[8] On appeal, the prosecution advances alternative grounds for upholding the assessment of 10 points, arguing that Frechette made deceitful statements to law enforcement and engaged in conduct after his arrest that constituted intimidation of a witness. Because the trial court made no findings about this alleged behavior by Frechette in its scoring of OV 19, and our review is for clear error, we decline to consider these reasons in the first instance. See *People v Smith*, 482 Mich 292, 314 n 50; 754 NW2d 284 (2008) ("[A]ppellate courts may not review the record to search for reasons to uphold a sentence that the trial court failed to justify."). That said, this case will return to the trial court "in a presentence posture, allowing the trial court to consider every aspect of defendant's sentences de novo." *People v Lampe*, 327 Mich App 104, 112; 933 NW2d 314 (2019). Our resolution of this appeal does not prohibit the trial court from considering alternative justifications for scoring OV 19 at resentencing. Because we are remanding for resentencing, it is also unnecessary to address Frechette's argument that his departure sentence was unreasonable.